Jeffrey D. Eisenberg (#4029)
Jordan P. Kendell (#10950)
Christopher P. Higley (#15161)
Sarah M. Wade (#15477)
**EISENBERG GILCHRIST & CUTT**
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 366-9100
Facsimile: (801) 350-0065
jeisenberg@egclegal.com
jkendell@egclegal.com
chigley@egclegal.com
swade@egclegal.com

John E. Hansen, (#4590)
SCALLEY READING BATES
HANSEN & RASMUSSEN, P.C.
15 W. South Temple, Suite 600
Salt Lake City, Utah 84101
Telephone: (801) 531-7870
hansen@scalleyreading.net

*Attorneys for Plaintiff*

## BEFORE THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| VICTORIA HEWLETT, <br><br> Plaintiff, <br><br> v. <br><br> UTAH STATE UNIVERSITY, SIGMA CHI CORPORATION, GAMMA KAPPA ALUMNI FOUNDATION, GAMMA KAPPA, ERIC OLSEN, KRYSTIN DESCHAMPS, KEVIN WEBB, and Jan and Jane Does I-XX <br><br> Defendants. | **COMPLAINT AND JURY DEMAND** <br><br> Case No: __2:16-cv-01141-DN__ <br><br> Judge ____David Nuffer____ |

Plaintiff Victoria Hewlett, by and through counsel and for causes of action, complains against Defendants the following:

//

## __INTRODUCTION__

1.      For a number of years prior to July 11, 2015, a dangerous environment existed at fraternity houses chartered at Utah State University (including Defendant Gamma Kappa). These houses frequently held "wet" parties, admitting underage visitors, including female high school and college students, without any screening. Some of the visitors were intoxicated when they entered.  Alcohol use was not properly monitored, and people were routinely served more alcohol even after they became visibly impaired.

2.      At the Sigma Chi house, especially during the summer months, it was common to admit underage visitors to such parties without any person being present to check for proof of age. It was also common that at such parties, especially during summer months, no one would assess whether the visitors desiring to enter were intoxicated and at risk to be taken advantage of and deny entrance to people who were intoxicated.

3.      During the same period, in USU fraternity houses, women, sometimes underage and intoxicated women, were being sexually abused at "wet" fraternity house parties.

4.      By early 2015, if not before, Defendants were aware of these problems.

5.      For instance, in early 2015 an underage Utah State student reported to school officials that she had been sexually assaulted by Ryan Wray, then President of the Pi Kappa Alpha fraternity.

6.      It was confirmed that Mr. Wray sexually violated the student in Wray's bedroom, where she had been taken to be "watched over" after consuming so much alcohol that she could no longer care for herself.  The Pi Kappa Alpha house is only steps from Defendant Sigma Chi's house. The case generated media publicity in the Logan, Utah area.

7.       USU learned the extent of the problem during its investigation and involvement in the above matter. Despite knowledge of this hazardous environment, Defendants chose not to

take appropriate measures to ensure that these dangerous practices were discontinued, or to ensure the safety of its students and invitees of the Sigma Chi Fraternity house.

8.     On the night of July 11, 2015, Utah State University student, Victoria Hewlett, then age 19, was furnished  alcohol at a party at the Gamma Kappa chapter house of the Sigma Chi fraternity at Utah State University and was then  beaten and raped by Utah State  student and Sigma Chi house resident, Jason Relopez.

9.     The rape and assault occurred inside Relopez' locked bedroom within the fraternity house.

10.     Jason Relopez pled guilty to attempted rape and attempted forcible sexual abuse and is presently incarcerated for this crime.

11.     The prior school year, in October 2014, Jason Relopez raped and assaulted fellow student, M.K.  M.K. reported the rape to officials at Utah State University as well as to the Risk Manager for the Gamma Kappa chapter of Sigma Chi.

12.     According to University documents, prior to plaintiff's sexual attack, before July 11, 2015 five other women at Utah State had reported to Utah State officials that they had been sexually assaulted by Jason Relopez.  The individual named defendants were aware of these reports.

13.     Upon information and belief, before July 11, 2015, officers and members of the Sigma Chi fraternity house knew that Jason Relopez was a sexually aggressive person who was a risk to others, especially women and especially when he became intoxicated.

14.     Despite this history, Utah State, Sigma Chi, and the individual defendants failed to adequately investigate, discipline, remove Relopez from the University, remove him from the Sigma Chi fraternity, terminate his rights to rent a bedroom at the fraternity house, refer his case to law enforcement, or take other measures to protect Utah State students and Sigma Chi visitors and invitees from being sexually abused by him.

15.     Shortly before or during Mr. Relopez' attack on Ms. Hewlett, a friend of Victoria Hewlett who had entered the party with her discovered that Ms. Hewlett had been taken by Mr. Relopez into Relopez' bedroom. The friend was concerned.

16.     The friend then went to several residents in the Sigma Chi house pleading to be allowed in to Relopez' room, or else that someone from the fraternity should enter the room. The friend was eventually directed to the "house manager," a Sigma Chi member.

17.     The friend informed the house manager that Ms. Hewlett was in Mr. Relopez' room, the door to the room was locked, Mr.  Relopez had ignored repeated knocks on the door and verbal requests to unlock the door, and that she urgently needed to enter the room.

18.     There was loud music playing at the time, and this would prevent a person from hearing activity in the room without entering.

19.     The House Manager and other Sigma Chi residents declined to do anything and made no effort enter the room or determine whether Ms. Hewlett was safe. The house manager told the friend that Relopez had rented the room, so no one could ever enter without his permission.

20.     For the next several hours, Ms. Hewlett was assaulted, raped, and humiliated by Mr. Relopez.

## PARTIES, JURISDICTION, AND VENUE

21.     Plaintiff Victoria Hewlett is a resident of the State of Utah and at all relevant times herein was a student at Utah State University.

22.     Defendant Sigma Chi is a not-for-profit corporation headquartered in Illinois. Defendant Sigma Chi regularly transacts business in the state of Utah, directly and through its chapters, including Defendant Gamma Kappa, and through its active alumni members and associations.

23.    Defendant Gamma Kappa Alumni Association is a non-profit corporation operating in Utah.

24.    Defendant Gamma Kappa is an unincorporated association and agent of Defendant Sigma Chi operating in Utah. Defendant Gamma Kappa is chartered, governed, managed, and controlled by Defendant Sigma Chi and by Defendant Gamma Kappa Alumni Association (together, collectively the "Fraternity Defendants"). Defendant Sigma Chi has the right to exercise control over the activities, assets, polices, and members of Gamma Kappa.

25.    Defendant Utah State University ("Utah State" or "USU") is a public postsecondary educational institution located in Logan, Utah. Utah State is a political subdivision or entity of the State of Utah. Utah State is organized and operated under the laws of the State of Utah and is a recipient of federal funds within the meaning of 20 U.S.C. § 1681.

26.    Defendant Eric Olsen was, at all relevant times, a citizen of Utah and was employed by Defendant Utah State University as its Associate Vice President for Student Services.

27.    Defendant Krystin Deschamps was, at all relevant times, a citizen of Utah and was employed by Defendant Utah State University as its Student Conduct Coordinator and Assessment Specialist.

28.    Defendant Kevin Webb was, at all relevant times, a citizen of Utah and was employed by Defendant Utah State as its Associate Director of Student Affairs and also served as a liaison between the university and the Greek community at the school.

29.    The Plaintiff has complied with the requirements of the Utah Governmental Immunity Act, Utah Code § 63G-7-101 *et seq.*

30.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

31.     This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this litigation involves matters of federal law including claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 *et seq*.

32.     This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

33.     Defendants Utah State University and Gamma Kappa are located in Utah, and the majority of relevant facts occurred in Utah, so venue in this Court is proper.

## <u>GENERAL ALLEGATIONS</u>

34.     On October 13, 2014, Jason Relopez and fellow Utah State University student M.K. were studying at M.K.'s home for a course they were enrolled in at Utah State when Jason Relopez raped M.K.

35.     Approximately two weeks later, M.K.'s friend and fellow USU student, Kasadie Hill, reported that Relopez had raped M.K. to Defendant Gamma Kappa Chapter's Risk Manager, Steven Whitten.

36.     Shortly thereafter, fearing backlash from Relopez and other Sigma Chis over Hill's report to Whitten, M.K. reported the rape to Jenny Erazo, Utah State University's Sexual Assault and Anti-Violence Information ("SAAVI") Coordinator.

37.     At the time of the report, M.K. was the fifth woman to report a sexual assault by Jason Relopez to Erazo.

38.     On November 4, 2014, Erazo contacted Kevin Webb, Greek Advisor and Assistant Director of Student Involvement and Leadership at Utah State University, to inform him that M.K. would not be attending Greek Leadership Weekend, a Utah State University sponsored learning retreat for the Greek community, due to the rape.

39.     The next day, Lori Larsen, member of the Beta Delta chapter of the Kappa Delta sorority, emailed Webb to bring his attention to the report that Relopez raped M.K.

40.     Larsen also reported to Webb that Relopez had been verbally, emotionally, and physically abusive towards other women in the Kappa Delta sorority.

41.     Webb forwarded Larsen's email to Eric Olsen, Utah State Associate Vice President for Student Affairs, and Krystin Deschamps, Utah State Student Conduct Coordinator.

42.     On November 7, 2014, Olsen, Deschamps, and Webb met with Relopez concerning the allegations of rape reported by M.K.

43.     At the meeting, Olsen told Relopez that he was "on USU's radar" and, if Utah State learned of any of the allegations being true, Relopez would be expelled from the school.

44.     However, following the meeting, neither Olsen, Deschamps, Webb or any other person from Utah State University conducted the necessary further factual investigation of the multiple allegations made against Relopez to determine their validity.

45.     Defendant Utah State University failed to adequately and reasonably respond and take appropriate action after receiving the report that Relopez had raped M.K. and had verbally, emotionally, and physically abused other female students at USU.

46.     Utah State did not pursue disciplinary action and failed to remove Relopez from the university. Relopez was permitted to remain a USU student following M.K. and Larsen's reports.

47.     Defendant Utah State University had knowledge that Relopez committed multiple Student Code violations including violent offenses in a series of incidents that, taken together, created a hostile environment for female students, including but not limited to Victoria Hewlett.

48.     At the time of the events complained of herein, Students enrolled at USU, including Jason Relopez, were subject to The Code of Policies and Procedures for Students at Utah State University ("Student Code").

49.     The Student Code prohibited, both on and off campus, "inflicting physical or mental duress, harm, or abuse upon another person, including but not limited to verbal abuse, threats and intimidation, … [and] sexual violence..." *See* Utah State University's Code of Policies and Procedures for Students.

50.     Utah State's Student Code promised that:

> Utah State University will not tolerate sexual assault/violence in any form, including incidents which arise in acquaintance and date situations. Where there is reasonable cause that a sexual assault/violence has occurred, the University will pursue strong disciplinary action, including the possibility of suspension or expulsion from the University.

*Id.*

51.     USU exercises substantial control over enrolled students on and off campus through its Student Code of Conduct.

52.     Indeed, the existence of Utah State's Student Code specifically recognizes Utah State's interest, ability, and role in curbing certain abhorrent behavior like sexual violence.

53.     Further, in its policy on sexual assault and violence, USU expressly committed to "investigate all reported incidents of sexual harassment" and, in cases where evidence from the investigation revealed that sexual harassment, including dating violence and sexual assault, had occurred, to impose appropriate sanctions upon students including suspension from Utah State. *See* Utah State University's Policy on Sexual Harassment.

54.     Fraternity Defendants also failed to adequately and reasonably respond and take appropriate action after Kasadie Hill reported to Gamma Kappa Risk Manager, Steven Whitten, that Relopez had raped M.K.

55.     Fraternity Defendants had specific knowledge that Relopez had sexually assaulted and raped M.K.

56.     Fraternity Defendants were also aware that Relopez had been barred from a Kappa Delta sorority event due to complaints of verbal, emotional, and physical abuse of other Kappa Delta sorority women.

57.     Upon information and belief, it was well known within the Sigma Chi fraternity that Relopez, though charismatic at times, was hot tempered, sexually aggressive, and a threat to women.

58.     The Sigma Chi Bylaws, Code of Conduct, and Statement of Policy on Human Decency and Dignity require chapter members to not physically, mentally, psychologically, or sexually abuse any human being.

59.     Fraternity Defendants maintain the right and responsibility to discipline chapter members for violations of Sigma Chi's Bylaws, Code of Conduct, and Statement of Policy on Human Decency and Dignity.

60.     Sigma Chi Corporation and the Gamma Kappa Alumni Foundation maintain substantial control over chapter operations and members.

61.     For example, Defendant Sigma Chi Corporation's Executive Committee:

    a.  makes recommendations to the President of Sigma Chi Corporation concerning undergraduate chapter problems;

    b.  may place on probation or suspend any undergraduate chapter charter;

    c.  investigates petitions for undergraduate chapter charters;

    d.  has appellate jurisdiction over the suspension or expulsion of members, and;

    e.  has the power to try any member for offenses specified in Sigma Chi policies and rules.

62.     Gamma Kappa Alumni Foundation owns the Gamma Kappa chapter house.

63.     The Gamma Kappa Alumni Foundation oversees and advises the Gamma Kappa undergraduate chapter at Utah State University through a chapter advisor appointed by the President of Sigma Chi Corporation.

64.      The Gamma Kappa chapter advisor attends undergraduate chapter meetings, assists with undergraduate chapter events, and provides counsel and advice to Gamma Kappa undergraduate chapter officers.

65.     Despite the substantial control Fraternity Defendants maintain over chapter operations and members, Fraternity Defendants chose not exercise their control to remove Relopez from the chapter house.

66.     Thus, following Hill's report, Relopez was permitted to remain a resident at the Gamma Kappa chapter house, despite the danger he posed to women.

67.     In August 2014, O.S. attended a party at the Pi Kappa Alpha fraternity house.

68.     The Pi Kappa Alpha fraternity sits adjacent to the Gamma Kappa chapter house on Aggie Boulevard.

69.     As was customary of parties held at both houses, partygoers were drinking and socializing at both Pi Kappa Alpha and Gamma Kappa throughout the night of the party.

70.     Although O.S. was too young to drink legally, members of Pi Kappa Alpha plied her with alcohol to the point of dangerous intoxication.

71.     When O.S. became too intoxicated to care for herself, fraternity members left O.S. in a closed bedroom with Pi Kappa Alpha President and Utah State University student, Ryan Wray.

72.     That night in his bedroom, Wray sexually assaulted O.S. while she was passed out drunk. O.S. awoke to find Wray with his hand down her pants, touching her sexually. When O.S. began to yell, Wray fled the bedroom.

73.     In March 2015, O.S. became concerned after learning that several other female Utah State students had been assaulted by Wray in closed bedrooms after becoming intoxicated while attending fraternity parties.

74.     Concerned for the safety of others, O.S. reported the details of her assault to Greek Advisor, Kevin Webb.

75.     O.S. told Webb she was aware that Wray had assaulted other female students under the same circumstances and was concerned that more assaults would occur unless the school intervened.

76.     On or about June 12, 2015, Utah State University officials Kevin Webb and Krystin Deschamps convened a Title IX hearing at which O.S. described the events that occurred on the night she was assaulted.

77.     O.S. relayed that, although she was underage, fraternity members served her so much alcohol that she became inebriated at which point she was taken to Wray's closed off bedroom to be watched after but, instead, was sexually assaulted.

78.     O.S. told Webb and Deschamps that Wray's bedroom was designated, both on the night that she was assaulted and during other fraternity parties, as a safe place where partygoers and fraternity members took their intoxicated friends to be watched over when they couldn't care for themselves.

79.     Defendant Utah State University failed to adequately and reasonably respond and take appropriate action after learning from O.S. that Pi Kappa Alpha and Gamma Kappa were hosting parties where underage drinking was occurring and where female social guests, who were too inebriated to care for themselves, were permitted behind closed bedroom doors where they were sexually assaulted.

80.     This, despite the fact that earlier in the same school year, a Utah State University official acknowledged that "alcohol is the number one weapon of choice when it comes to sexual

assault and rape, particularly at Utah State." Christopher Farnes, *MIP's on the rise at Utah State*, September 23, 2014, http://usustatesman.com/mips-on-the-rise-at-utah-state/ (last visited Oct 6, 2016).

81.     At USU the year prior, 100% of the known sexual assaults and rapes of university students were alcohol related. *Id.*

82.     Further, University Defendants, who had actual and specific knowledge of Jason Relopez' violent sexual tendencies, allowed Relopez to remain a student and, therefore, resident at the Gamma Kappa chapter house despite the obvious risk his propensities coupled with the fraternity party environment posed to female students at Utah State.

83.     Defendant USU maintains substantial control over the Greek community at Utah State. Utah State, through the university controlled and recognized student organization Greek Council, maintains authority to suspend or impose sanctions upon fraternities and sororities chartered at Utah State.

84.     Defendant USU also oversees and advises the Greek community at the school through Utah State Associate Director for Student Affairs and Greek Advisor, Kevin Webb.

85.     Webb works with USU fraternity and sorority leadership to counsel students when problems including hazing, alcohol misuse, and sexual assault arise.

86.     In addition, Webb teaches a for-credit Greek Leadership Course offered every semester to the Greek community at Utah State University. Topics covered in the course include hazing prevention and reporting, membership recruitment, and leadership skills.

87.     Webb also hosts a monthly, mandatory "All-Greek Meeting" wherein topics like alcohol use, hazing, and sexual assault are addressed.

88.     Utah State University also sponsors and hosts "Greek Leadership Weekend," a leadership retreat for Greek students to come together to receive leadership training on team building, conflict and communication, and unity.

89.    Further, in 2011, after an eighteen (18) year old USU student died of alcohol poisoning due to a fraternity hazing incident, Utah State agreed to better supervise and control the drinking culture of its fraternities.

90.    Specifically, Defendant USU agreed to:

a.    Review existing alcohol training and, to the extent it could reasonably do so, incorporate approaches similar to the most successful age-appropriate public health models that target smoking cessation and teen pregnancy;

b.    Invite Logan City Police and USU Campus Police to participate in the training;

c.    Include in the training the idea that students should feel a responsibility to watch out for each other. Also, provide information regarding Logan Regional Hospital policies regarding police notification and underage drinkers bringing friends to the ER for treatment, and;

d.    Consider making annual alcohol training programs mandatory for all Greek organizations.

(*See* Exhibit A – Starks Settlement Agreement with Utah State University).

91.    On the night of July 11, 2015, Plaintiff Victoria Hewlett and her friends were social guests at a party at the Gamma Kappa chapter fraternity house.

92.    On the night of the party, partygoers were not checked for identification to determine whether they could legally consume alcohol.

93.    There was also no system in place to ensure that only those 21 years and older were served alcohol.

94.    Nor was anyone at the party monitoring to ensure that intoxicated guests were not served more alcohol.

95.     Further, no sober monitors were designated to control who entered the party or to monitor guests and their activities.

96.     As was often the case at the Gamma Kappa chapter house, instead of limiting the party to the common areas Gamma Kappa chapter members opened their bedrooms to all the guests.

97.     Underage guests who were invited to listen to music and illegally consume alcohol and drugs, including cocaine, in various bedrooms throughout the night.

98.     At the party, fraternity members served alcohol to underage and already intoxicated Victoria Hewlett.

99.     During the party, Relopez and Victoria entered Relopez' bedroom to locate her cell phone.

100.    Once inside the room, Relopez shut and locked his bedroom door. Shortly thereafter, Relopez told Victoria: "I'm stronger than you and I'll win tonight." Relopez then became aggressive, slapping and choking Victoria and ultimately raping her.

101.    While Victoria was trapped inside Defendant Relopez' bedroom, Victoria's friend, Ms. Stromberg, began pounding on Relopez' bedroom door in an attempt to get Relopez to unlock his room and let Victoria out.

102.    When pounding on the door failed, Stromberg asked other partygoers for help opening the door.

103.    Other partygoers directed Stromberg to speak with Gamma Kappa House Manager, C.K.

104.    Stromberg pleaded with C.K. to open Relopez' door.  However, C.K refused to open Relopez' door or take any other action to investigate or prevent the rape and assault from occurring, despite knowledge that Relopez had sexually violent tendencies towards women.

105.   Fraternity Defendants' Standard Operating Procedures mandate that all Sigma Chi chapter houses designate an undergraduate chapter member to fulfill the duties of risk manager, which include the following:

    a.   Correcting any risk issues or conditions that directly violate or are anticipated to violate the policies, rules or regulations and laws of the university, state or federal government, or the Sigma Chi fraternity;

    b.   Conduct and coordinate the safety education of chapter members and addresses concerns related to chapter risks such as sexual abuse, and;

    c.   Ensure that party rules are followed, including: the provision of sober monitors at parties who will maintain responsibility for the safety of guests, ensuring that only guests of legal drinking age are consuming alcohol, and ensuring that all unwanted behavior and guests are controlled or removed.

106.   Despite a known history of sexually aggressive and inappropriate behavior, Defendant Jason Relopez was elected as the Gamma Kappa Chapter's Risk Manager following the rape of M.K. and was still holding the position of risk manager for the Fraternity Defendants on the night he raped and beat Victoria.

107.   Following Victoria's rape and beating, she reported the incident to Kevin Webb at Utah State and to the police.

108.   Throughout her dealings with Webb, neither he nor any other Utah State official ever offered or provided Victoria services required under Title IX to allow her to continue her education at Utah State and to help her overcome the emotional trauma she experienced due to the rape.

109.   As a result, Victoria took leave from her studies and eventually transferred to a different university in order to continue her education.

110.    Sexual assault and rape constitute the most severe, pervasive, and objectively oppressive form of sexual harassment that exists, and in this case Utah State and the individual defendants denied Victoria the equal access to education that Title IX is designed to protect.

### COUNT 1 – NEGLIGENCE v. FRATERNITY DEFENDANTS

111.    Plaintiff incorporates all paragraphs of the Complaint into this Count by reference as though fully set forth herein.

112.    Fraternity Defendants expressly undertook obligations related to the provision of security and risk management in the Gamma Kappa chapter house and for making fraternity parties reasonably safe to guests such as Victoria.

113.    The Gamma Kappa chapter exists as an agent of Sigma Chi, chartered and allowed to exist by Sigma Chi.

114.    Sigma Chi retains significant control and supervision over the Gamma Kappa chapter through its laws, rules, policies, and standard operating procedures, and the use of staff and alumni advisors who regularly check and report on the Gamma Kappa chapter's activities and whether Gamma Kappa is following Sigma Chi's mandates.

115.    The Fraternity Defendants, directly and through Gamma Kappa chapter risk manager Defendant Jason Relopez, assumed obligations of providing security for fraternity events, enforcing its own risk management policies and procedures, and managing fraternity events so as to comply with the laws and regulations of Utah State University.

116.    Fraternity Defendants owed common law and assumed duties to plan lawful fraternity events, provide reasonably safe premises for such events, and to prevent/protect Victoria Hewlett from being raped at a Gamma Kappa fraternity house party.

117.    Fraternity Defendants breached their duties by, among other things:

a.  Providing ineffective supervision and control over the Gamma Kappa chapter members and guests, and activities authorized, directed, and participated in by those members and guests;

b.  Implementing ineffective measures to stop dangerous activities which they knew, or should have known, were occurring in the Gamma Kappa house;

c.  Choosing not to implement and enforce reasonable safety/security measures when, by their own conduct, they created or increased the foreseeable risk that a young woman such as Victoria might be harmed by the conduct of a fraternity chapter member, including harm caused by the foreseeable, criminal sexual misconduct of Jason Relopez;

d.  Permitting Relopez to remain a member of the Gamma Kappa chapter, live in the chapter house, and attend fraternity parties, despite knowledge that Relopez had raped M.K. and been barred from attending a sorority event for being verbally, emotionally, and physically abusive towards other women in the Kappa Delta sorority, thereby allowing Relopez' predatory behavior to continue;

e.  Improperly entrusting the Gamma Kappa chapter house to the control of undergraduate students who lack experience, who are unaware of the inherent, substantial risk of injury and death from unsafe housing management policies and practices, and who do not understand the consequences of a failure to implement critical safety practices;

f.  Choosing not to develop and implement proper risk management, crisis management, sexual abuse prevention and education, and house management programs;

g.  Hosting a social event without appropriate monitors or security throughout the duration of the event to supervise activities of both members and guests with the objective of promoting compliance with fraternity policies, university rules and policies, Utah laws, and general safety,

h.  Refusing direct requests to intervene and enter a locked portion of the fraternity house, which permitted a rape and assault to continue as alleged herein, and;

i.  Other negligent acts and omissions.

118.   As a direct and proximate result of the negligence of Fraternity Defendants, Victoria was raped and sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.  Past, present, and future pain and suffering, both physical and emotional;

b.  Past, present, and future psychological trauma and impairment;

c.  Medical bills and other expenses for past and future treatment;

d.  Interference with continuing education and lost educational time;

e.  Impaired educational capacity;

f.  Impaired earning capacity.

**COUNT II – PREMISES LIABILITY v. FRATERNITY DEFENDANTS**

119.   Plaintiff incorporates all paragraphs of this Complaint into this count by reference as though fully restated herein.

120.   Fraternity Defendants were at all relevant times the owners, occupants, and/or parties in control of the Gamma Kappa fraternity house.

121.   Fraternity Defendants owed duties to social invitees on the property to exercise reasonable care to guard against foreseeable dangers arising from the use of the property.

122.    Fraternity Defendants knew or had reason to foresee that women visiting the property could be harmed by Jason Relopez at events involving the illegal, negligent and/or reckless provision of alcohol to minors, particularly where, as here, there was a complete absence of security.

123.    Fraternity Defendants breached their duties by, among other things:

a.  Holding regular and notorious parties that involved the provision of alcoholic beverages to minors and inebriates that, by virtue of the fact that parties were held in bedrooms at the fraternity house, created an environment that made sexual assault and rape more likely;

b.  Planning and conducting fraternity parties in defiance of applicable regulations and codes prohibiting the provision of alcohol to minors, including underage drinking, sexual abuse, rape, and other wrongdoing;

c.  Hosting a social event without taking reasonable steps to provide security and enforce applicable regulations, codes, rules, and policies prohibiting the provision of alcohol to minors, underage drinking, sexual assault, rape, and other wrongdoing;

d.  Using the property in a manner that posed a foreseeable risk of harm to invitees, including Victoria, and;

e.  Refusing direct requests to intervene and enter a locked portion of the fraternity house, which permitted a rape and assault to continue as alleged herein, and

f.  Other negligent acts and omissions.

124.    As a direct and proximate result of the negligence of Fraternity Defendants, Victoria was raped and sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.   Past, present, and future pain and suffering, both physical and emotional;

    b.   Past, present, and future psychological trauma and impairment;

    c.   Medical bills and other expenses for past and future treatment;

    d.   Interference with continuing education and lost educational time;

    e.   Impaired educational capacity, and;

    f.   Impaired earning capacity.

## COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS v. FRATERNITY DEFENDANTS

125.    Plaintiff incorporates all paragraphs of this Complaint into this count by reference as though fully restated herein.

126.    Fraternity Defendants knew or should have known that furnishing  underage Victoria with alcohol and then leaving her to fend for herself unsupervised behind a locked bedroom door with Jason Relopez, knowing that he had previously engaged in acts of sexual abuse, involved an unreasonable risk of causing distress.

127.    Fraternity Defendants knew or should have known, from the facts known to them, that the distress, if it were caused, might result in illness or bodily harm.

128.    Plaintiff Victoria Hewlett has suffered damages as a result of Fraternity Defendants' actions.

129.    Defendants' conduct was willful and malicious or manifested a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiff.

## COUNT IV – VICARIOUS LIABILITY v. DEFENDANTS SIGMA CHI CORPORATION AND GAMMA KAPPA ALUMNI FOUNDATION

130.    Plaintiff incorporates all paragraphs of this Complaint into this count by reference as though fully restated herein.

131.    Defendant Gamma Kappa was an agent of Defendants Gamma Kappa Alumni Foundation and Sigma Chi Corporation and were operating in the course and scope of their agency at the time of the subject incident.

132.    As previously described, Defendant Gamma Kappa, the house manager and risk manager, and other officers and members of the fraternity were negligent in operations and its conduct was a direct and proximate cause of the damages sustained by Plaintiff Victoria Hewlett.

133.    Defendants Sigma Chi Corporation and Gamma Kappa Alumni Foundation are vicariously liable for the conduct of Defendant Gamma Kappa under the doctrine of *respondeat superior* and are therefore liable for the damages sustained by Plaintiff.

## COUNT VI – VIOLATION OF THE EDUCATION AMENDMENTS OF 1972 (TITLE IX), 20 U.S.C. § 1981 *et seq* v. DEFENDANT UTAH STATE UNIVERSITY

134.    Plaintiff incorporates all paragraphs of this Complaint into this Count by reference as though fully restated herein.

135.    A University who is a recipient of federal funds is responsible for sexual harassment under Title IX "wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis v. Monroe County Bd. of Educ.* 526 U.S. 629 (1999).

136.    In the case of student-on-student harassment, the funding recipient, Defendant Utah State University, exercised significant control over the harasser, Defendant Jason Relopez, including but not solely because it has disciplinary authority over its students, in this instance under the Student Code and through its policy on sexual harassment.

137.    Defendant Utah State University was on notice of sexual violence and misconduct by Defendant Jason Relopez before these events.  By its actions and inactions Utah State created a climate whereby such misconduct was tolerated, thus encouraging the repeated misconduct that proximately caused injury to Victoria.

138.    Defendant Utah State University through its employees and administrators, including but not limited to Kevin Webb, Jenny Erazo, Krystin Deschamps, and Eric Olsen had actual knowledge of the sexual assault and rape of M.K. and other misconduct toward women at Utah State University by Defendant Jason Relopez.

139.    Persons with actual knowledge at Defendant Utah State had authority to take action to end Relopez' discrimination and harassment.

140.    By its actions before Victoria Hewlett's injuries, Defendant Utah State acted with deliberate indifference towards the rights of Victoria Hewlett and other female students to a safe and secure educational environment materially depriving Victoria of her ability to pursue her education at Utah State University in violation of Title IX.

141.    Specifically, Defendant Utah State violated Title IX by:

a.   Refusing to take action to protect Victoria and other female Utah State students, despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent future sexual assault and/or rape by Jason Relopez;

b.   Allowing Relopez to remain a student at Utah State or, alternatively, being deliberately indifferent to, despite repeated allegations of sexual assault by Relopez;

c.   Refusing to enforce its own policies and requirements for students, or, alternatively, being deliberately indifferent to the enforcement thereof;

d.   Failing to warn students of the known danger of sexual assault posed by Defendant Relopez;

e.   Posting only positive information, and failing to post critical safety information regarding risks concerning Gamma Kappa on Utah State's

website despite knowledge of the dangers at Gamma Kappa's house, or, alternatively, being deliberately indifferent thereto;

f.   Creating a climate that tolerated sexual assault and other misconduct by Greeks generally and Relopez specifically, or, alternatively being deliberately indifferent thereto;

g.   Failing to implement policies and procedures to ensure compliance with Title IX, or, alternatively, being deliberately indifferent thereto;

h.   Failing to take appropriate action against Relopez for misconduct in violation of its own Student Code, or, in the alternative, being deliberately indifferent thereto, and;

i.   Prior to the date of Victoria's rape and assault, failing to contact law enforcement , failing to take reasonable measures to investigate and verify the many reports of sexual assault and abuse by Relopez;

j.   Through other actions, inactions, and deliberate indifference.

142.   Utah State's actions and deliberate indifference subjected Victoria Hewlett and others to harassment and discrimination, including sexual assault and rape.

143.   By its actions and inactions after the rape of Victoria Hewlett, Defendant Utah State acted with deliberate indifference to the rights of Victoria Hewlett to a safe and secure educational environment, thus materially impairing Victoria's ability to pursue her education at Utah State in violation of the requirements of Title IX.

144.   Defendant Utah State's actions, inactions, and deliberate indifference subjected Victoria to further discrimination and harassment including, but not limited to, Defendant Utah State's inappropriate response to the rape of Victoria Hewlett.

145.   Specifically, Defendant Utah State violated Title IX after the rape of Victoria Hewlett by:

a.  Failing to provide any health and/or psychological services to Victoria after she was sexually assaulted and raped or, alternatively, being deliberately indifferent thereto;

b.  Failing to provide Victoria Hewlett with academic assistance and services after she had been raped, or, alternatively, being deliberately indifferent thereto;

c.  Failing to provide, offer, recommend, or coordinate adequate counseling to Victoria Hewlett after she had been raped, or, alternatively, being deliberately indifferent thereto, and;

d.  Through other actions, inactions, and deliberate indifference.

146.  As a direct and proximate result of Utah State's actions, inactions, and deliberate indifference, Victoria Hewlett has suffered severe and ongoing injuries, damages, and losses for which she is entitled to be compensated, including but not limited to:

a.  Past, present, and future pain and suffering, both physical and emotional;

b.  Past, present, and future psychological trauma and impairment;

c.  Medical bills and other expenses for past and future treatment;

d.  Interference with continuing education and lost educational time;

e.  Impaired educational capacity;

f.  Impaired earning capacity;

g.  All relief that the Court deems fair and equitable, and;

h.  Attorney's fees pursuant to 42 USC § 1988(b).

**COUNT VII – VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. SECTION 1983 *et seq*. v. INDIVIDUAL UNIVERSITY DEFENDANTS**

147.  Plaintiff incorporates all paragraphs of this Complaint into this Count by reference as though fully restated herein.

148.     Plaintiff Victoria Hewlett has a clearly established right under federal statutory and Constitutional law to bodily integrity and a right to be free of sexual harassment.

149.     The individual University Defendants, acting under color of law, and with knowledge of Plaintiff's established rights, violated Plaintiff's right to bodily integrity and her right to be free from sexual harassment.

150.     Plaintiffs rights were violated in the sexual assault and rape against her by Relopez and disregarded by University Defendants, who responded with before-the-fact deliberate indifference towards M.K. when she reported her rape and continued deliberate indifference when, upon becoming aware of the dangerous practices occurring at fraternity parties, failed to take action to remedy or correct the high-risk environment.

151.     Plaintiffs rights were further violated when University Defendants failed to provide Plaintiff with any counseling and educational assistance and/or accommodations to assist her in continuing her education at Utah State following her assault and rape.

152.     As a direct and proximate result of Utah State's actions, inactions, and deliberate indifference, Victoria Hewlett has suffered severe and ongoing injuries, damages, and losses for which she is entitled to be compensated, including but not limited to:

      a.   Past, present, and future pain and suffering, both physical and emotional;

      b.   Past, present, and future psychological trauma and impairment;

      c.   Medical bills and other expenses for past and future treatment;

      d.   Interference with continuing education and lost educational time;

      e.   Impaired educational capacity;

      f.   Impaired earning capacity;

      g.   All relief that the Court deems fair and equitable, and;

      h.   Attorney's fees pursuant to 42 USC § 1988(b).

## COUNT VIII – BREACH OF CONTRACT v. UNIVERSITY DEFENDANTS

153.    Plaintiff incorporates all paragraphs of this Complaint into this Count by reference as though fully restated herein.

154.    The Student Code constitutes an agreement between Utah State University and its students and contains the promise that Defendant Utah State will properly and appropriately respond to reports of sexual assault, violence, and harassment in order to ensure the safety of all students.

155.    University Defendants breached these provisions by failing to initiate and/or follow procedures and guidelines as to the discipline of a sexually violent student who caused harm to Plaintiff.

156.    As a result of the breach of the agreement, Plaintiff was beat and sexually assaulted and endured physical and psychological trauma, medical bills and expenses, interference with continuing education, an impaired educational capacity, and an impaired earning capacity.

157.    Plaintiff Victoria Hewlett was harmed as a result of said acts and is entitled to damages in an amount to be established at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the following damages:

A.  For economic damages in an amount to be determined at trial;

B.  For non-economic damages in an amount to be determined at trial;

C.  For punitive damages;

D.  For costs, interests, and attorney fees to the extent allowed by law; and,

E.  For such other relief as the Court deems appropriate.

### JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted this 4th day of November, 2016.

**EISENBERG, GILCHRIST & CUTT**


_/s/_____
Jeffrey D. Eisenberg
Jordan P. Kendall
Christopher P. Higley
Sarah M. Wade


**SCALLEY READING BATES
HANSEN & RASMUSSEN**


_/s/_____
John E. Hansen

# EXHIBIT A

## RELEASE OF ALL CLAIMS

Utah State University agrees to do the following:

1.    Review existing alcohol and hazing training and, to the extent
      it can reasonably do so, incorporate approaches similar to the
      most successful and age-appropriate public health models
      that target smoking cessation and teen pregnancy.  Student
      representatives will be invited to participate in the design of
      any new alcohol training approaches and/or modifications of
      existing ones.

2.    Invite Logan City Police and USU Campus Police to participate
      in the training, and encourage Logan Police to apply for a grant
      to fund such activities.  Encourage presenters to provide less
      lecture and more student participation during the training.

3.    Include in the training the idea that students should feel a
      responsibility to watch out for each other (i.e., if someone dies,
      you will regret your inaction for life).  Also provide information
      regarding Logan Regional Hospital policies regarding police
      notification and underage drinkers bringing friends to the
      ER for overdose treatment.  Encourage Logan City Police to provide
      information during their training that students should not be
      reluctant to call 911.

4.    Encourage faculty to allow the USU Wellness Center to conduct
      surveys of alcohol and drug use among students.

5.    Consider making annual alcohol and hazing update training
      programs mandatory for all club sports and Greek organizations,
      and invite the Athletic Department to participate in this training
      as they see fit.

How the forgoing recommendations are implemented, and/or whether the recommendations
continue to be implemented, will be at the sole discretion of Utah State University.

      In consideration of the foregoing, GEORGE STARKS and JANE STARKS, personally
and as acting personal representatives of the Estate of MICHAEL STARKS, deceased,
hereinafter referred to as STARKS, do hereby release, acquit and forever discharge the State of
Utah, Utah State University, and the Utah Risk Management Fund, as well as their respective
successors, insurers, attorneys, assigns, agencies, divisions, departments, facilities, directors,
officers, employees, agents, representatives, servants, and administrators, hereinafter referred to
as RELEASEES, of and from any and all claims, demands, damages, actions, causes of action or
suits of whatever kind or nature, which now exist or which may hereafter accrue, whether actual,
pending or threatened, which now exist or may hereafter accrue.  Such claims, causes of action,

injuries or damages released hereby include, but are not limited to, those related to an incident which occurred on or about November 20, 2008, and has or could have been asserted in the lawsuit entitled GEORGE STARKS and JANE STARKS, personally and as acting personal representatives of the Estate of MICHAEL STARKS, deceased  v. UTAH STATE UNIVERSITY, and THE STATE OF UTAH, Case No. 0901102233, filed in the First Judicial District Court in and for Cache County, State of Utah (the "Lawsuit").

STARKS agree to dismiss the Lawsuit with prejudice and on the merits, with each party bearing their respective costs and attorney fees.

STARKS further understand and agree that the occurrence above described may have caused injuries or damages, or given rise to claims for damages the existence of which and the consequences of which are now unknown but which may become known in the future.  STARKS nevertheless intend to and do release all claims for all injuries, damages or claims of whatever type or nature, whether now known or unknown and whether now in existence or hereafter to arise.  STARKS understand that the damages and injuries sustained may be permanent and progressive and that the recovery therefrom is uncertain and indefinite, and in making this release and agreement, it is agreed that they rely wholly upon their own judgment, belief and knowledge of the nature, extent and duration of said damages and injuries and that no representations, opinions, or statements regarding said damages and injuries or regarding any other matters made by the RELEASEES or any other person or persons representing RELEASEES has influenced STARKS to any extent whatever in making this release.

STARKS represent and agree that there are no outstanding unresolved subrogation claims or liens: (a) for reimbursement of any attorney, healthcare provider, or other expenses incurred by STARKS or their behalf, in any was connected with any released claim; or (b) for reimbursement of amounts paid on STARKS behalf by any third party, including, but not limited to, any insurer and any government program or agency, in any way connected with any released claim.  In the event that any such claim for reimbursement is subsequently made against any of the RELEASEES, STARKS agree to defend, indemnify and hold them harmless from and against all such claims.

STARKS acknowledge that the agreement herein is in compromise of a disputed claim and shall not be construed as an admission of liability by the RELEASEES because they expressly deny liability.

STARKS declare that this Release of All Claims contains the entire agreement between STARKS and RELEASEES, and that the terms of this Release of All Claims are contractual and not a mere recital.

STARKS further declare that this Release of All Claims was mutually drafted and shall not be construed against RELEASEES.

Release of All Claims
Starks v. Utah State University

STARKS understand and agree that this Release of All Claims has been, and shall for all purposes be deemed to have been executed and delivered within the State of Utah, and the rights and obligations of the parties hereto shall be construed and enforced in accordance with the laws of the State of Utah.  Any dispute relating to this Release of All Claims shall be adjudicated in Utah's Third Judicial District Court.

STARKS further understand and agree that this Release of All Claims supercedes all prior and contemporaneous oral and written agreements and discussions and shall be binding upon STARKS heirs, executors, administrators and assigns.

The undersigned declare under criminal penalty of the State of Utah that they have read the foregoing, fully understand it, and fully intend to be legally bound by it.

DATED this ⟨25⟩ day of ⟨January⟩, 2011,

_____
GEORGE S. STARKS
Personally and as acting personal representative
of the Estate of Michael Starks, deceased


DATED this _____ day of _____, 2011,

_____
JANE STARKS
Personally and as acting personal representative
of the Estate of Michael Starks, deceased


DATED this ⟨25⟩ day of ⟨January⟩, 2011,

_____
JOSEPH DULIN
On behalf of Utah State University