MEB W. ANDERSON (10227)
RACHEL G. TERRY (10769)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: mebanderson@agutah.gov
        rterry@agutah.gov

*Attorneys for Defendants Utah State University, Eric Olsen, Krystin Deschamps, and Kevin Webb*

---

### IN THE UNITED STATES DISTRICT COURT
### IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VICTORIA HEWLETT,<br><br>                         Plaintiff,<br><br>v.<br><br>UTAH STATE UNIVERSITY, SIGMA CHI CORPORATION, GAMMA KAPPA ALUMNI FOUNDATION, GAMMA KAPPA, ERIC OLSEN, KRYSTIN DESCHAMPS, KEVIN WEBB, and Jan and Jane Does I-XX,<br><br>                     Defendants. | **MOTION TO DISMISS AMENDED COMPLAINT AGAINST THE INDIVIDUAL DEFENDANTS ON § 1983 CLAIM <u>AND</u> MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS ON BREACH OF CONTRACT CLAIM**<br><br>Case No. 2:16-cv-01141<br><br>Judge David Nuffer |

Defendants Eric Olsen, Krystin Deschamps, and Kevin Webb ("the Individual

Defendants"), by and through counsel, Meb W. Anderson and Rachel G. Terry, Assistant Utah

Attorneys General, hereby submits this Motion to Dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(6).  Defendant Utah State University ("USU")[1] submits this Motion for

Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

Victoria Hewlett alleges two causes of action against the Individual Defendants.

- A cause of action under 42 U.S.C. § 1983 is brought against the Individual

    Defendants and alleges violation a "clearly established right under federal

    statutory and Constitutional law to bodily integrity and a right to be free of sexual

    harassment."  (Docket No. 57, at ¶ 167.)

- A claim alleging a "breach of contract" is brought against the Individual

    Defendants and USU.  (Docket No. 57, at ¶¶ 172-76.)

Both causes of action fail to state a viable claim against the Individual Defendants

because they fail to state a claim upon which relief can be granted.  As argued more fully herein,

even accepting all facts pled in the Amended Complaint as true, Hewlett's claims against the

Individual Defendants are deficient because (1) Hewlett's § 1983 claim against individual

officials is not permitted under Title IX and barred by the doctrine of qualified immunity and (2)

Hewlett's breach of contract claim is barred by the Utah Governmental Immunity Act against the

Individual Defendants and fails to state a claim against the University because there was not a

contract between Hewlett and the University and thus no breach of contract.

---

[1] USU filed an answer, responding to all claims and allegations. *See* (Docket No. 81.). Thus, as it relates to USU, this Motion should be treated as Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c).

# BACKGROUND FACTS[2]

1.      On the night of July 11, 2015, USU student, Victoria Hewlett, then age 19, was furnished alcohol at a party at the Gamma Kappa chapter house of the Sigma Chi fraternity at USU and was then beaten and raped by USU student and Sigma Chi house resident, Defendant Relopez. (Am. Compl., Docket No. 57, at ¶ 8.)

2.      Jason Relopez ("Relopez") pled guilty to various charges of sexual abuse and is currently incarcerated for his crimes against Hewlett.  (Docket No. 57, at ¶10.)

3.      According to University documents, prior to Plaintiff's sexual attack on July 11, 2015, five other women at USU had reported to USU officials that they had been sexually assaulted by Jason Relopez. The individually named Defendants were aware of these reports. (Docket No. 57, at ¶ 12.)

4.      Despite this history, USU, Sigma Chi, and the individual defendants failed to adequately investigate, discipline, remove Relopez from the University, remove him from the Sigma Chi fraternity, terminate his rights to rent a bedroom at the fraternity house, refer his case to law enforcement, or take other measures to protect USU students and Sigma Chi visitors and invitees from being sexually abused by him. (Docket No. 57, at ¶ 14.)

5.      Defendant Eric Olsen was, at all relevant times, a citizen of Utah and was employed by Defendant USU as its Associate Vice President for Student Services. (Docket No. 57, at ¶ 28.)

6.      Defendant Krystin Deschamps was, at all relevant times, a citizen of Utah and was employed by Defendant USU as its Student Conduct Coordinator and Assessment Specialist. (Docket No. 57, at ¶ 29.)

7.      Defendant Kevin Webb was, at all relevant times, a citizen of Utah and was

---

[2] Defendants deny many of the allegations in Hewlett's Amended Complaint.  However, for purposes of this Motion to Dismiss only, the factual allegations of the Amended Complaint are admitted.  Those relevant to this Motion are repeated here as pled.

employed by Defendant USU as its Associate Director of Student Affairs and served as a liaison between the university and the Greek community at the school. (Docket No. 57, at ¶ 30.)

8.      Defendant Gamma Kappa Alumni Foundation owns real property, including a multiple unit residential building, adjacent to USU at approximately 705 North 800 East, Logan, Utah. (Docket No. 57, at ¶ 37.)

9.      Prior to allegedly sexually assaulting Hewlett, USU student, Kasadie Hill, reported that Relopez had raped M.K. to Defendant Gamma Kappa Chapter's Risk Manager, Steven Whitten. (Docket No. 57, at ¶ 52.)

10.      Shortly thereafter, fearing backlash from Relopez and other Sigma Chis over Hill's report to Whitten, M.K. reported the rape to Jenny Erazo, USU's Sexual Assault and Anti-Violence Information ("SAAVI") Coordinator. (Docket No. 57, at ¶ 53.)

11.      At the time of the report, M.K. was the fifth woman to report a sexual assault by Jason Relopez to Erazo. (Docket No. 57, at ¶ 54.)

12.      On November 4, 2014, Erazo contacted Kevin Webb, Greek Advisor and Assistant Director of Student Involvement and Leadership at USU, to inform him that M.K. would not be attending Greek Leadership Weekend, a USU sponsored learning retreat for the Greek community, due to the rape. (Docket No. 57, at ¶ 55.)

13.      The next day, Lori Larsen, member of the Beta Delta chapter of the Kappa Delta sorority, emailed Webb to bring his attention to the report that Relopez raped M.K. (Docket No. 57, at ¶ 56.)

14.      Larsen also reported to Webb that Relopez had been verbally, emotionally, and physically abusive towards other women in the Kappa Delta sorority. (Docket No. 57, at ¶ 57.)

15.      Webb forwarded Larsen's email to Eric Olsen, USU Associate Vice President

for Student Affairs, and Krystin Deschamps, USU Student Conduct Coordinator. (Docket No. 57, at ¶ 58.)

16.    On November 7, 2014, Olsen, Deschamps, and Webb met with Relopez concerning the allegations of rape reported by M.K. (Docket No. 57 at ¶ 59.)

17.    At the meeting, Olsen told Relopez that he was "on USU's radar" and, if USU learned of any of the allegations being true, Relopez would be expelled from the school. (Docket No. 57, at ¶ 60.)

18.    However, following the meeting, neither Olsen, Deschamps, Webb or any other person from USU conducted the necessary further factual investigation of the multiple allegations made against Relopez to determine their validity. (Docket No. 57, at ¶ 61.)

19.    Defendant USU failed to adequately and reasonably respond and take appropriate action after receiving the report that Relopez had raped M.K. and had verbally, emotionally, and physically abused other female students at USU. (Docket No. 57, at ¶ 62.)

20.    USU did not pursue disciplinary action and failed to remove Relopez from the university. Relopez was permitted to remain a USU student following M.K. and Larsen's reports. (Docket No. 57, at ¶ 63.)

21.    Defendant USU had knowledge that Relopez committed multiple Student Code violations including violent offenses in a series of incidents that, taken together, created a hostile environment for female students, including but not limited to Victoria Hewlett. (Docket No. 57, at ¶ 64.)

22.    At the time of the events complained of herein, Students enrolled at USU, including Jason Relopez, were subject to The Code of Policies and Procedures for Students at USU ("Student Code"). (Docket No. 57, at ¶ 65.)

23.    University Defendants, who had actual and specific knowledge of Jason

Relopez' violent sexual tendencies, allowed Relopez to remain a student and, therefore, resident at the Gamma Kappa chapter house despite the obvious risk his propensities coupled with the fraternity party environment posed to female students at USU. (Docket No. 57, at ¶ 99.)

24.     Defendant USU maintains substantial control over the Greek community at USU. Defendant USU, through the University-controlled and recognized student organization Greek Council, maintains authority to suspend or impose sanctions upon fraternities and sororities chartered at USU. (Docket No. 57, at ¶ 100.)

25.     Defendant USU also oversees and advises the Greek community at the school through USU Associate Director for Student Affairs and Greek Advisor, Kevin Webb. (Docket No. 57, at ¶ 101.)

26.     Webb works with USU fraternity and sorority leadership to counsel students when problems including hazing, alcohol misuse, and sexual assault arise. (Docket No. 57, at ¶ 102.)

27.     In addition, Webb teaches a for-credit Greek Leadership Course offered every semester to the Greek community at USU. Topics covered in the course include hazing prevention and reporting, membership recruitment, and leadership skills. (Docket No. 57, at ¶ 103.)

28.     Webb also hosts a monthly, mandatory "All-Greek Meeting" wherein topics like alcohol use, hazing, and sexual assault are addressed. (Docket No. 57, at ¶ 104.)

29.     Defendant USU also sponsors and hosts "Greek Leadership Weekend," a leadership retreat for Greek students to come together to receive leadership training on team building, conflict and communication, and unity. (Docket No. 57, at ¶ 105.)

30.     Following Victoria's rape and beating, she reported the incident to Kevin Webb at USU and to the police. (Docket No. 57, at ¶124.)

31.     Throughout her dealings with Webb, neither he nor any other USU official ever offered or provided Victoria services required under Title IX to allow her to continue her education at USU and to help her overcome the emotional trauma she experienced due to the rape. (Docket No. 57, at ¶ 125.)

32.     As a result, Victoria took leave from her studies and eventually transferred to a different university to continue her education.  (Docket No. 57, at ¶ 126.)

Hewlett's allegations against the Individual Defendants, together with the legal arguments contained herein, evidence that the claims against the Individual Defendants must be dismissed as a matter of law.

## MOTION TO DISMISS STANDARD

A motion to dismiss[3] - as the one brought here - requires the court to decide whether the factual allegations made in the Amended Complaint, if true, would entitle Hewlett to a legal remedy.  To state a viable claim "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."[4]  "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level."[5]  In other words, the complaint must provide "enough facts to state a claim to relief that is plausible on its face."[6]  A claim is plausible on its face when the factual

---

[3] Motions for judgment on the pleadings under Rule 12(c) are governed by the same legal standard used under Rule 12(b)(6). *See Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011).

[4] *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[6] *Id*.

allegations allow the court to infer the defendant's liability based on the alleged conduct.[7]  The factual allegations must present more than "the mere possibility of misconduct."[8]

Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims."[9]  The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."[10]

Further, legal conclusions, deductions, and opinions couched as facts are not presumed to be true, and the court must disregard conclusory allegations without supporting factual averments.[11]  When a civil rights complaint - as the one presented by Hewlett here - contains only "bare assertions" involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the court considers those assertions conclusory and does not afford them the presumption of truth.[12]  "With all that said, [the Court] must remember to view this litigation through the prism of qualified immunity."[13]

---

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).
[8] *Id*. at 678.
[9] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).
[10] *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).
[11] *See, Erikson v. Pawnee County Bd. of County Comm.*, 263 F.3d 1151, 1154-55 (10th Cir. 2001).
[12] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 554-55).
[13] *Clark v. Summit Cty*. Sheriff, 508 F. Supp. 2d 929, 932 (D. Utah 2007), aff'd sub nom. *Clark v. Edmunds*, 513 F.3d 1219 (10th Cir. 2008).

**ARGUMENT**

I.    **Qualified Immunity Precludes Hewlett's Section 1983 Claim Against the Individual Defendants.**

The undisputed facts in this case show that the Individual Defendants are entitled to qualified immunity.  "Qualified immunity is designed to shield public officials from liability and ensure that erroneous suits do not even go to trial."[14]

The United States Supreme Court has held that:

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

> Because qualified immunity is an immunity from suit rather than a mere defense to liability it is effectively lost if a case is erroneously permitted to go to trial. Indeed, we have made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.[15]

The Tenth Circuit has held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[16]  The Supreme Court has further held that "[q]ualified immunity shields an [official] from suit when she makes a decision that, even if

---

[14] *Oliver v. Woods,* 209 F.3d 1179, 1185 (10th Cir. 2000).
[15] *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (marks and citations omitted).
[16] *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001).

constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."[17]  Qualified immunity may be denied "only if, on an objective basis, it is obvious that no reasonably competent [official] would have concluded that the actions were constitutional."[18]  But "'if [officials] of reasonable competence could disagree' about the lawfulness of the challenged conduct, then '[qualified] immunity should be recognized.'"[19]

Once a defendant raises qualified immunity, the plaintiff bears the heavy burden of proving (1) that the facts alleged make out a violation of a constitutional right, and/or (2) that a reasonable municipal official would have known they were violating such a constitutional right.[20]  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."[21]

If the material facts are not disputed the question of immunity is a legal one for the court to decide.[22]  "[T]here is no such thing as a 'genuine issue of fact' as to whether the official 'should have known' that his conduct violated constitutional rights.  The conduct was either 'reasonabl[e] under settled law in the circumstances,' or it was not…"[23]  University administrators and employees "who perform discretionary functions are generally immune to liability for civil damages "insofar as their conduct does not violate clearly established statutory

---

[17] *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 599 (2004).
[18] *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006).
[19] *Id.* at 1136 (alteration in original) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
[20] *Pearson*, 129 S.Ct. at 816.
[21] *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).
[22] *Gomes*, 451 F.3d at 1136.
[23] *Id*. (second alteration in original) (quoting *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000)).

or constitutional rights of which a reasonable person would have known."[24] Here, Hewlett's Amended Complaint fails to plead a violation of an established constitutional right or that the Individual Defendants should have known they were violating a known constitutional right.

### a. No Constitutional Violation.

Hewlett's Amended Complaint asserts that the Individual Defendants violated Hewlett's "right under federal **statutory** and **Constitutional** law to bodily integrity and a right to be free of sexual harassment." (emphasis added). This claim as stated in the Amended Complaint fails to plead violation of an established constitutional right for two reasons. First, Title IX, which is the applicable statutory law, does not provide the basis for claim against individual university officials. Title IX only provides for a private right of action against the funding recipient, i.e., the University. Second, there is not an established constitutional right to a guaranteed level of safety and security nor is there a constitutional right to counseling and other support services.

### i. There Is No Private Cause of Action Permitted Against the Individual Defendants for Violations of Statutory Protections Against Sexual Harassment Against Students.

The Individual Defendants have searched case law throughout the United States and have found few cases where University employees are sued under the theory Hewlett espouses here under § 1983.[25] It appears Hewlett is making an end run around her Title IX claim against the University. Nowhere is this made clearer than in Hewlett's own Amended Complaint in the § 1983 allegations when it states: "As a direct and proximate result of **Utah State's** actions,

---

[24] *Moore v. Regents of the Univ. of California*, No. 15-CV-05779-RS, 2016 WL 7048991, at *3 (N.D. Cal. Dec. 5, 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[25] *See Jordan v. Randolph Cty. Sch.*, No. 4:08-CV-131CDL, 2009 WL 1410082, at *7 (M.D. Ga. May 19, 2009) (holding that "it would be entirely duplicative for Jordan to go through § 1983 to bring a Title IX claim.").

inactions, and deliberate indifference, Victoria Hewlett has suffered . . .".  (Docket No. 57, at ¶ 171) (emphasis added.)

Clearly the proper defendant is USU, not the Individual Defendants.  To that end, a litany of Title IX cases can be found where University officials' unconstitutional conduct is challenged as the basis for liability under Title IX.  In this case, Hewlett's § 1983 claim against the Individual Defendants is duplicative of her Title IX claim against the University, and should be dismissed on that ground alone.  While Hewlett does not cite Title IX in this cause of action, Hewlett states that the claim is based upon federal statutory laws and then goes on to rely on the Title IX standard of deliberate indifference and asserts that the Individual Defendants violated Hewlett's rights by not providing services recommended by the Department of Education's Office of Civil Rights guidance documents for Title IX (often referred to as Dear Colleague letters.). Hewlett fails to cite any other statutory standard that would be applicable to her claim.

Importantly, "Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations."[26]  " To allow plaintiffs to use § 1983 in this manner would permit an end run around Title IX's explicit language limiting liability to funding recipients."[27]

---

[26] *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007).
[27] *Id.*

ii.     **There Is No Constitutional Right That Obligates the University to Ensure a Person's Security Against Harm from A Third Person.**

The Individual Defendants named in the Amended Complaint did not violate Hewlett's alleged due process constitutional "right under federal statutory and Constitutional law to bodily integrity and a right to be free of sexual harassment." (Docket No. 57, at ¶ 167.)[28]

-     **Most Courts Hold a Due Process Claim Is Not Available When a Third Party Assaults Another Student**.

"[T]here is no due process obligation that requires a State to ensure the plaintiff's security against harm from a third person."[29] "While courts recognize that the Due Process Clause protects an individual's interest in his or her bodily integrity, the Constitution, however, imposes no affirmative duty on municipalities to protect citizens from the acts of private individuals."[30] Under a traditional due process analysis in a section 1983 claim, Hewlett has no claim against the Individual Defendants for her alleged assault at the hands of Relopez, who was not a state actor.

"The concept of a constitutional right to bodily integrity is the right to be free from 'unauthorized and unlawful physical abuse' at the hands of the state *by a state official acting or claiming to act under the color of the law,* when the alleged conduct is of such a nature as to be

---

[28] Hewlett does not indicate which provisions of the United States Constitution the Individual Defendants are alleged to have violated. However, it appears that Hewlett is asserting "substantive due process" claims. *See Samuelson v. Oregon State Univ.*, 162 F. Supp. 3d 1123, 1135 (D. Or. 2016) (Ms. Samuelson's § 1983 due process claim alleges Mr. Riley violated her constitutional right to be free from bodily harm. Generally, a State's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause.).
[29] *Doe v. Univ. of Alabama in Huntsville*, 177 F. Supp. 3d 1380, 1396 (N.D. Ala. 2016).
[30] *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 608 (E.D. Pa. 2014) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989).

"shocking to one's conscience."[31] Here there is no such conduct by a University official and Hewlett's substantive due process claim fails as a matter of law.

- **Hewlett's Assertion of The Deliberate Indifference Standard for the §1983 Claim Is Misplaced. However, Even If It Applied, Hewlett Has Failed to Plead Facts to Support Deliberate Indifference.**

Hewlett ignores the case law cited above, which supports that she has no cause of action for due process against the Individual Defendants; instead, Hewlett claims that the Title IX deliberate indifference standard applies to her § 1983 claim as well.  In pleading a §1983 claim against the Individual Defendants, Hewlett claims the University was on notice of prior sexual assaults and acted with deliberate indifference to that notice.  As argued above, the deliberate indifference standard does not apply to Hewlett's §1983 action against the Individual Defendants.  Instead, this is the test applied to evaluations of whether a funding recipient has violated Title IX.[32]

But to the extent the Court applies the Title IX "deliberate indifference to actual notice" analysis to Hewlett's section 1983 claim, the Individual Defendants are still entitled to qualified

---

[31] *Doe v. Univ. of Alabama in Huntsville*, 177 F. Supp. 3d at 1397 (quoting *United States v. Lanier*, 520 U.S. 259, 262 (1997) (emphasis in original and marks omitted); *Frazer*, 25 F.Supp.3d at 608; *see also Santamorena v. Georgia Military College*, 147 F.3d 1337, 1340 (11th Cir. 1998) (as a general rule a State's failure to protect an individual against private violence does not violate due process).

[32] At least one unpublished District Court case from California has indicated that when individual defendants of a University are sued for money damages related to an alleged sexual assault under § 1983 the plaintiff must show the defendants "intentionally discriminated" or acted with "deliberate indifference." *Moore v. Regents of the Univ. of California*, No. 15-CV-05779-RS, 2016 WL 7048991, at *3 (N.D. Cal. Dec. 5, 2016) (conclusory allegation of widespread practice of failing to respond appropriately to reports of sexual misconduct is not deliberate indifference).  "The "deliberate indifference" showing is the same that Title IX requires."  Hewlett has not alleged intentional discrimination here.

immunity.  "Institutions 'are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'"[33] Importantly, "[s]chool administrators need not engage in particular disciplinary action and victims do not have a right to seek particular remedial demands."[34] To that end, the U.S. Supreme Court has cautioned courts to "refrain from second-guessing the disciplinary decisions made by school administrators."[35]

Here, Hewlett's factual allegations regarding the Individual Defendants involvement in the alleged "deliberate indifference" are sparse.[36]  In particular, Hewlett's claims regarding actual notice are lacking.  "'[A]ctual notice requires more than a simple report of inappropriate conduct.'" [37] At minimum, a campus official must be provided with basic facts such as "who, what, when and where."[38] In her Amended Complaint Hewlett fails to allege such information was ever provided to the Individual Defendants.

---

[33] *Moore v. Regents Univ. Cal.*, No. 15-CV-05779-RS, 2016 WL 2961984, at *6 (N.D. Cal. May 23, 2016) (quoting *Davis,* 526 U.S. at 648) ; *see also Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1283 (10th Cir. 2017) (quoting *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006).

[34] *Escue v. N. Okla. College*, 450 F.3d 1146, 1155 (10th Cir. 2006) (internal citations omitted).

[35] *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

[36] Hewlett generically and without any specific details (or names) alleges that: "According to University documents, prior to Plaintiff's sexual attack on July 11, 2015, five other women at Utah State had reported to Utah State officials that they had been sexually assaulted by Jason Relopez.  The individually named Defendants were aware of these reports."  (Docket No. 57, at ¶ 12.)  These are the types of bare and conclusory allegations that *Iqbal* warns against.  Hewlett cannot substantiate these false allegations.  A careful review of Hewlett's other allegations indicates as much.

[37] *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1284 (10th Cir. 2017) (quoting *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006).

[38] *Id.*  at 1286.

Hewlett claims Kevin Webb received notice of the M.K. incident.[39]   Hewlett claims

Webb forwarded a November 5, 2014 email to Eric Olsen and Krystin Deschamps that allegedly

indicated that Relopez had raped M.K.  (Docket No. 57, at ¶ 58.)  Hewlett does not identify any

information regarding what detail was provided to put the University on notice of the events.

But the Tenth Circuit has recently made it clear that receiving and forwarding an email is

insufficient for § 1983 liability:

> For example, consider the assistant for a Dean of Students who is tasked with
> adjudicating student-conduct complaints. Under Ms. Ross's interpretation, this
> assistant would be considered an appropriate person simply for receiving and
> forwarding reports to the Dean of Students. The clerical act of receiving and
> forwarding a report may ultimately lead the Dean of Students to take corrective
> action, but is not itself corrective action.[40]

Further, Hewlett does not indicate in her Complaint whether M.K. anonymously reported

the rape to Jenny Erazo, whether she agreed to cooperate with a University investigation, or

whether she or any corroborating witness provided information sufficient to provide the

Individual Defendants or anyone at USU with "actual knowledge" regarding the assault that took

place.

Notwithstanding, and in an abundance of caution given that Relopez has due process

rights just like any other student at USU, two days after receiving the email from Webb, relying

on the information they had, "On November 7, 2014, Olsen, Deschamps, and Webb met with

Relopez and Olsen told Relopez that he was on USU's 'radar.'"  (Docket No. 57, at ¶ 58-60.)

---

[39] Allegations contained in the Amended Complaint regarding Ryan Wray are not relevant to any
of Hewlett's claims.  Ryan Wray is not a party here, and is not alleged to have sexually assaulted
Hewlett.
[40] *Ross,* 859 F.3d at 1290.

Based on the information available to them at the time, the actions of the Kevin Webb, Krystin Deschamps, and Eric Olsen were reasonable.  Stated another way, they absolutely were not "clearly unreasonable in light of the known circumstances."[41]  In this case, the Individual Defendants' response as alleged by Hewlett was consistent with the Department of Education's guidance documents.  The Questions and Answers on Title IX and Sexual Violence specifically provides that in the instance where a victim does not want to proceed with an investigation (which would include an instance where the victim did not file a report or filed an anonymous report),[42] a University may take other steps to address the sexual violence, including putting an "alleged perpetrator on notice of allegations of harassing behavior" and counseling the alleged perpetrator appropriately.  The Individual Defendants' conduct was directly in line with this guidance and therefore reasonable.

More to the point, "the university **did not act in a way that was clearly unreasonable** by failing to sua sponte adjudicate Mr. [Relopez]'s responsibility for the prior reports of sexual harassment.[43]"  To do so, the University would have subjected itself to constitutional or statutory claims. And, as the Supreme Courts has stated "it would be entirely reasonable for a school to

---

[41] *Id.* at 1283.

[42] *See* U.S. Dept. of Educ. Office of Civil Rights, Questions and Answers on Title IX and Sexual Violence, p. 20; available at https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf  Judicial Notice of this letter is proper on a motion to dismiss.  *See Moore v. Regents of the Univ. of California*, No. 15-CV-05779-RS, 2016 WL 2961984, at *1 (N.D. Cal. May 23, 2016) (judicial notice granted to the DOE OCR letter Questions and Answers on Title IX and Sexual Violence because it is a record from a government website whose authenticity cannot reasonably be questioned).

[43] *Ross*, 859 F.3d at 1294 (emphasis added).

refrain from a form of disciplinary action that would expose it to constitutional or statutory claims."[44]

The Tenth Circuit has also stated – referencing Supreme Court Authority - that with regard to the day-to-day operations of a university and the role and responsibility of the university: "We find it significant that in those cases[45] there was no element of encouragement of the misconduct by the school district. To be sure, in those cases the school district could anticipate that the very operation of a school would be accompanied by sexual harassment, but that is simply because, unfortunately, some flawed humans will engage in such misconduct when they are in the company of others."[46]  Here there is no plausible allegation of an element of encouragement from either USU or the Individual Defendants.

Hewlett also alleges that the Individual Defendants and USU allowed a culture of drinking that fostered an environment conducive to sexual assault.  (Docket No. 57, at ¶¶ 86-112.)  But, an allegation of tolerance of underage drinking – even if proven to be true – does not put anyone on "actual notice" of sexual assault and is not "deliberate indifference" to any sexual assault.[47]  For example, a school or school official cannot be held liable under Title IX "merely because it *should* have known of sexual assaults."[48]  "Tolerating students' misuse of alcohol—even with knowledge that such misuse increases the risk of harmful behaviors such as sexual assault—is simply not the same thing as actual knowledge of sexual assault."[49]

---

[44] *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 649 (1999).
[45] The Tenth Circuit is referencing *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 632 (1999) and *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998).
[46] *Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1177 (10th Cir. 2007).
[47] *Shank v. Carleton Coll.*, 232 F. Supp. 3d 1100, 1109 (D. Minn. 2017).
[48] *Id*.
[49] *Id.*

Of significant importance, especially to a claim against the Individual Defendants, is the fact that the alleged rape occurred off campus.  (Docket No. 57, at ¶ 37.)  For example, in *Rost ex rel. K.C. v. Steamboat Springs RE–2 School Distric*t, the Tenth Circuit found that a school district could have reasonably believed that it did not have responsibility or control over several incidents of harassment that occurred off school grounds and in private settings.[50]  This fact alone warrants dismissal of the Individual Defendants.  Other Circuit Courts and District Courts hold similar to the Tenth Circuit.

For example, in *Ostrander v. Duggan*, the Eighth Circuit held that a sexual assault of a university student by another student who was a member of a fraternity, at a private residence that was not owned by the fraternity or the university, was not harassment under a "program or activity."[51]  The Eighth Circuit also held in *Roe v. St. Louis University* that a sexual assault by a fraternity pledge perpetrated against another university student, at a party at an off-campus apartment, did not occur under a university "program or activity."[52]

Finally, in *Samuelson v. Oregon State University*, the District of Oregon found that Title IX was not implicated based on a peer sexual assault, where both the alleged drugging and assault of the victim occurred at two separate off-campus apartments "that simply happened to be located in the same city as the university."[53]  These cases support the contention that no constitutional violation occurred here that was remediable by the Individual Defendants, let alone a clearly established violation.

---

[50] 511 F.3d 1114, 1122 (10th Cir. 2008).
[51] 341 F.3d 745, 750–51 (8th Cir. 2003) (alleged assaults reported to "the Office of Greek Life.").
[52] 746 F.3d 874, 884 (8th Cir. 2014).
[53] 162 F.Supp.3d 1123, 1131–32 (D. Or. 2016).

Because the Individual Defendant's actions were not clearly unreasonable, Hewlett's section 1983 claim should be dismissed.[54]  In an appropriate case, such as this, "there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not "clearly unreasonable" as a matter of law."[55]

### iii.    Hewlett's Alleged Due Process Right to Counseling and Education.

The Individual Defendants did not commit any alleged due process constitutional violation through a failure to provide counseling or educational assistance or accommodations to Hewlett.  (Docket No. 57, at ¶ 170.)  First, there is no such established right to a University education.[56]  Second, even if there were, Hewlett's allegations fail to support a claim that the Individual Defendants violated such a right. The totality of the allegations here includes:

> 124.    Following Victoria's rape and beating, she reported the incident to Kevin Webb at Utah State and to the police.

> 125.    Throughout her dealings with Webb, neither he nor any other Utah State official ever offered or provided Victoria services required under Title IX to allow her to continue her education at Utah State and to help her overcome the emotional trauma she experienced due to the rape.

---

[54] Even if Hewlett has alleged it was policy to investigate, "a school's violation of its own policy does not alone establish deliberate indifference[.]" *Karasek v. Regents of Univ. of California*, 226 F. Supp. 3d 1009, 1028 (N.D. Cal. 2016) (Judge noting "[a]gain, if it was my decision to make, based on the allegations I would have acted differently. But, as I have said before, I am not allowed to substitute my opinion for that of the University."), appeal dismissed sub nom. *Commins v. Regents of Univ. of California*, No. 17-15123, 2017 WL 3200942 (9th Cir. Feb. 2, 2017).

[55] *Davis*, 526 U.S. at 649.

[56] Substantive due process protects fundamental rights and liberty interests. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Although Hewlett alleges she was denied the right to an education and education counseling, education is not a right "granted to individuals by the Constitution." *Plyler v. Doe*, 457 U.S. 202, 221 (1982).

126.     As a result, Victoria took leave from her studies and eventually transferred to a different university to continue her education.

(Docket No. 57, at ¶ 124-26.)

Hewlett provides the Court with no other allegation regarding any lack of accommodation.  Hewlett's terse allegations are not enough to indicate a constitutional violation of her due process rights.  First, there is no indication as to whether sought academic assistance or counseling from any of the many supports services offered by the University, let alone from any of the Individual Defendants.  Hewlett states that she did not return to USU following the July 2015 incident, making it unclear how or when the University would provide the services about which Hewlett complains. Further, Hewlett does not and cannot plead that the services allegedly not provided to her fall under the responsibilities of the Individual Defendants and could have been provided by the Individual Defendants.  Simply alleging "they didn't give it to me" is not enough.  But, Hewlett does allege that "Defendant Relopez pled guilty to attempted rape and attempted forcible sexual abuse and was subsequently incarcerated for this crime."  (Docket No. 57, at ¶ 10.)  Relopez was expelled from USU.

For student-to-student harassment, the recipient is only liable "for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefits."[57]  "In order to avoid deliberate indifference liability an institution must merely respond to known peer harassment in a manner that is not clearly unreasonable. The not clearly unreasonable standard is intended to afford flexibility to school

---

[57] *Samuelson v. Oregon State Univ.*, 162 F. Supp. 3d 1123, 1130 (D. Or. 2016) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)).

administrators."[58]  Here, Hewlett left school on her own and transferred to another University.
(Docket No. 57, at ¶ 126.)  There is no indication in the Amended Complaint that anything the
Individual Defendants did after the rape allegations made by Hewlett came to light was clearly
unreasonable.

### b.  No Clearly Established Constitutional Violation.

If the Court determines Hewlett has alleged facts sufficient to state a constitutional
violation that will withstand the first prong of the qualified immunity analysis on this motion to
dismiss, under no scenario was any such constitutional violation sufficiently clearly established
such that the Individual Defendants would have known they were violating Hewlett's
constitutional rights.  And while the Court's inquiry into whether there was a constitutional
violation can include factual inquiry, the decision of whether an Individual Defendant violated
clearly established law is a question of law the Court must address in light of the allegations
made in the Amended Complaint.[59]

To be clearly established, "[t]he contours of the right must be sufficiently clear that a
reasonable official would understand that what he is doing violates that right."[60]  The inquiry is
"whether the law put officials on fair notice that the described conduct was unconstitutional."[61]
"Officials who are mistaken about the lawfulness of their conduct may still be entitled to
qualified immunity if the mistake is reasonable in light of the applicable law and the facts known
to them at the time."[62]

---

[58] *Roe v. St. Louis Univ.*, 746 F.3d 874, 882 (8th Cir. 2014) (marks and citation omitted).
[59] *See Samuelson*, 162 F. Supp. 3d at 1135 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).
[60] *Albright v. Rodriguez,* 51 F.3d 1531, 1535 (10th Cir. 1995).
[61] *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004).
[62] *Gomes v. Wood,* 451 F.3d 1122, 1136 (10th Cir. 2006).

Nowhere is the fact that the actions taken by the Individual Defendants here were not clearly established constitutional violations made clearer than in the fact that at least two different approaches exist as to how to evaluate due process claims brought under section 1983 against school officials when a sexual assault occurs on or near a University campus.  For example, at least one district court in California has applied the Title IX "deliberate indifference" standard.  Hewlett cites this standard in her Amended Complaint under the section 1983 cause of action.

However, recent decisions regarding the University of Alabama in Huntsville and Temple University further muddies the waters on what is clearly established law.  "The concept of a constitutional right to bodily integrity is the right to be free from 'unauthorized and unlawful physical abuse' at the hands of the state *by a state official acting or claiming to act under the color of the law,* when the alleged conduct is of such a nature as to be "shocking to one's conscience."[63]  Here, just as in the cited cases, the assault on Hewlett was carried out by a private actor [Relopez], not a state official or one acting under color of state law.  On these facts, the Individual Defendants cannot even be aware which standard a Court of law should apply.  One standard analyzes their conduct for deliberate indifference, one says they cannot be individually liable at all and that Hewlett's sole course of action is pursuant to Title IX.

Also, the June 2017 Tenth Circuit Court of Appeals ruling granting summary judgment to Tulsa University on a Hewlett's Title IX claims against the University indicated a number of

---

[63] *Doe v. Univ. of Alabama in Huntsville*, 177 F. Supp. 3d 1380, 1397 (N.D. Ala. 2016) (quoting *United States v. Lanier*, 520 U.S. 259, 262 (1997) (emphasis in original and marks omitted); *Frazer v. Temple*, 25 F.Supp.3d 598, 608 (2014); *see also Santamorena v. Georgia Military College*, 147 F.3d 1337, 1340 (11th Cir. 1998) (as a general rule a State's failure to protect an individual against private violence does not violate due process).

unclear and undecided issues remain in these types of cases.[64]  In *Ross*, decided just two months

ago, the Tenth Circuit left legal questions unanswered, thus evidencing the lack of clearly

established law in this arena of constitutional allegations.[65]  *Ross* also did not address an issue

raised by the *amici curiae* that "the district court's analysis is also flawed because under § 1983,

an official cannot escape a finding of deliberate indifference where the evidence shows that he

refused to verify underlying facts that he strongly suspected to be true, or declined to confirm

inferences of risk that he strongly suspected to exist."[66]

Finally, *Ross* did not even address whether an investigation is a form of corrective action.

"Perhaps investigation is a form of corrective action; perhaps not. The answer is not self-evident

and we need not resolve this question today[.]"[67]  One cannot imagine a scenario where the

applicable law under which Hewlett wants to hold the Individual Defendants liable was any less

clearly established.  Simply, in the fall of 2014 the Individual Defendants were not on notice that

their actions regarding Relopez or Hewlett were constitutionally deficient.

## II.   Hewlett's Claim for Breach of Contract Fails as a Matter of Law Against all Defendants.

Hewlett alleges that officials at USU failed to follow procedures and promises in the

USU Student Code when they did not initiate disciplinary procedures against a male student who

had been anonymously reported for alleged sexual violence against other female USU students.

(Docket No. 57, at ¶ 174.)  Hewlett avers the Student Code creates a binding contract.  (Docket

---

[64] *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1284 (10th Cir. 2017).
[65] *See Ross*, 859 F.3d at 1284 n.1 ("Courts [within the Tenth Circuit] are split on whether notice can consist of prior reports.").
[66] *Ross*, 859 F.3d at 1286 n.4 (marks omitted).
[67] *Ross*, 859 F.3d at 1291.

No. 57, at ¶ 173.)  Hewlett claims that because of the breach of the alleged contract created by the Student Code "Plaintiff was beat and sexually assaulted[.]" (Docket No. 57, at ¶ 175.)

Hewlett's breach of contract claim fails as a matter of law against the Individual Defendants, because they are immune from suit under the Utah Governmental Immunity Act ("UGIA"), and because Hewlett's Complaint does not allege that a contract was formed between Hewlett and any of the Individual Defendants.  It similarly fails against the University because no contract is created by the Student Code.  The pertinent part of the School Code indicates the University will strive to maintain a safe educational environment for students by properly and appropriately responding to reports of sexual assault. *Id* at ¶ 154.

### a.  The Individual Defendants are Immune from the Breach of Contract Claim.

Hewlett's claims against the Individual Defendants are contractual, and are barred by the UGIA. Utah Code Ann. 63G-7-301(1). The UGIA allows contractual claims against the State and state entities, but bars them as to individual employees.[68]  Accordingly, Hewlett's claims against the Individual Defendants are barred and should be dismissed with prejudice.

### b.  Hewlett's Complaint Fails to Allege any Viable Contract.

Hewlett's Amended Complaint lacks any allegation of the existence of an implied contract with any of the Individual Defendants or USU because there is none.  First, Hewlett's Amended Complaint fails to allege the formation of a contract with any of the Individual Defendants, and such an allegation would be inconsistent with the normal student-administrator

---

[68] *Larson v. Snow Coll.*, 189 F.Supp. 2d 1286, 1301 (D. Utah 2000) (stating that the UGIA "waives immunity and the UGIA's notice requirements for 'governmental entities' (i.e., Snow College), but not for any individual employees.") (citing *Nielson v. Gurley*, 888 P.2d 130, 135 (Utah Ct. App. 1994)).

relationship.[69]  Second, the Utah Supreme Court has stated that to state a claim for breach of

contract a plaintiff must state, at a minimum, allegations of when the parties entered into the

contract, the essential terms of the contract, and the nature of defendant's breach.[70]  "These

essential elements are required to fulfill the requirements of a 'short and plain' statement under

our pleading standard.  These minimal allegations will 'give the defendant fair notice of the

nature and basis or grounds of the claim and a general indication of the type of litigation

involved.'"[71]

        Also, an implied contract claim fails as a matter of law because Hewlett has not identified

any provisions that bind the university—instead she references provisions in the Student Code

that regulate the behavior of students at USU and disciplinary actions for student misconduct.

Specifically, Hewlett claims that the following statement in the Student Code creates a binding

contract:

> Utah State University will not tolerate sexual assault/violence in any form,
> including incidents which arise in acquaintance and date situations. Where there is
> reasonable cause that a sexual assault/violence has occurred, the University will
> pursue strong disciplinary action, including the possibility of suspension or
> expulsion from the University.

(Docket No. 57, at ¶ 67.)

---

[69] *See Roach v. Univ. of Utah*, 968 F.Supp. 1446, 1456 n.4 (D. Utah 1997) (dismissing contract claims against University of Utah individual employees).
[70] *America West Bank Members, LLC v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224.
[71] *Id.* (quoting *Canfield v. Layton City*, 2005 UT 60, ¶ 14, 122 P.3d 622).

However, these provisions solely govern student conduct, and does not set forth any obligation on behalf of USU.[72]  To be clear, the cases cited above evidence that courts are "generally reluctant to find contractual obligations between students and their schools based upon student handbooks."[73]

Thus, Hewlett has failed to identify what implied contract she believes existed between herself and USU and what portions of the implied contract she alleges were breached. This vague and conclusory pleading does not plausibly state a claim for breach of contract.[74]

Further, an unsubstantiated expectation on Hewlett's part is not enough to establish a meeting of the minds that in turn created an enforceable contract obligating USU to initiate disciplinary proceedings in a manner consistent with Hewlett's expectations.[75]  Also, the relationship between a college and its students is not "purely contractual in the traditional

---

[72] *See Ye Li v. Univ. of Tulsa*, No. 12-CV-641-TCK-FHM, 2013 WL 352116, at *10 (N.D. Okla. Jan. 29, 2013) (Student Handbook does not form any contractual relationship between Plaintiff and the University); *Doe v. Oklahoma City Univ.*, 406 F. App'x 248, 252 (10th Cir. 2010) (holding that breach of contract claim must fail because student handbook plainly did not form a contract between the students and the university, and even if it did, the district court concluded there was insufficient evidence "from which reasonable jurors could find a material breach of that contract so as to create a genuine issue of material fact."); *Ruegsegger v. W. NM Univ. Bd. of Regents*, 154 P.3d 681, 688 (N.M. Ct. App. 2006) (disciplinary procedures following allegations of sexual assault described in Student Handbook are not contractually binding, but rather provide guidelines for operation of University).

[73] *Shank v. Carleton Coll.*, 232 F. Supp. 3d 1100, 1116 (D. Minn. 2017) (citing Minnesota cases and applying them to dismiss a breach of contract claim based on a student code that stated College would "foster[] a safe environment, free of sexual misconduct in any form.").

[74] *See America West Bank Members, LLC v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224.

[75] *See Seare v. Univ. of Utah School of Med.*, 882 P.2d 673, 678 (Utah Ct. App. 1994) (citing *Commercial Union Assoc. v. Clayton*, 863 P.2d 29, 37 (Utah App. 1993) (stating that before enforcement of contract, meeting of minds must occur which must be spelled out with sufficient definiteness)); *Shank*, 232 F. Supp. 3d at 1116 (holding that "broadly worded generalities" in code of conduct "are too general to be enforceable" and do not substantiate a breach of contract).

sense."[76]  This is particularly the case when contractual allegations are based on provisions that govern student conduct only.

The contractual claims against the Individual Defendants should be dismissed because they are barred by the Utah Governmental Immunity Act.  Further the contract claim should be dismissed entirely because Hewlett and the Individual Defendants and/or USU did not enter into a viable contract.

## CONCLUSION

A ruling of a constitutional violation would overturn or be contrary to prior case law cited herein, and the Tenth Circuit precedent cited above.  Importantly, the Individual Defendants were not on notice of any constitutional infirmity regarding their conduct and did not violate clearly established law.  Thus, Hewlett's claims against Eric Olsen, Krystin Deschamps, and Kevin Webb should be dismissed with prejudice because they are qualifiedly immune from suit for the alleged constitutional violations, are immune under the UGIA for the contract claims, and because they did not enter into a contract with Hewlett.  Hewlett's contract claim against USU fails to state a plausible or viable claim and should be dismissed with prejudice because no contract existed or was created by the Student Code.

DATED:  August 11, 2017.

<div style="margin-left:2em">

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Meb W. Anderson
MEB ANDERSON
RACHEL G. TERRY
Assistant Utah Attorneys General
Attorney for State Defendants

</div>

---

[76] *State of Utah v. Gregory T. Hunter*, 831 P.2d 1033, 1036 (Utah App. 1992).