IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VICTORIA HEWLETT,<br><br>                    Plaintiff,<br>v.<br><br>UTAH STATE UNIVERSITY, SIGMA CHI CORPORATION, GAMMA KAPPA ALUMNI FOUNDATION, GAMMA KAPPA, ERIC OLSEN, KRYSTIN DESCHAMPS, KEVIN WEBB, JASON RELOPEZ, GAMMA KAPPA HOUSE CORPORATION, and Jan and Jane Does I-XX,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER:**<br>- **GRANTING IN PART AND DENYING IN PART<br>[82] MOTION TO DISMISS and**<br>- **GRANTING IN PART AND DENYING IN PART<br>[93] MOTION TO AMEND**<br><br>Case No. 2:16-cv-01141-DN<br><br>District Judge David Nuffer |

       Defendant Jason Relopez was convicted for attacking plaintiff Victoria Hewlett at a party at the Gamma Kappa chapter house of the Sigma Chi fraternity (collectively, "Gamma Kappa"). At the time of the alleged[1] events at the Gamma Kappa house on July 11, 2015 (the "Incident"), both Relopez and Hewlett were students at Utah State University ("Utah State"). Hewlett has filed this civil action against Relopez, Gamma Kappa, Utah State, and three administrators at Utah State (the "Personnel Defendants"), claiming damages under theories of tort, civil rights, and contract law. This Order decides two motions filed in the case: a motion to dismiss and a motion to amend the complaint.

---

[1] The word "alleged" is used here with some reservation. Relopez was convicted of attempted rape and attempted forcible sexual abuse, which significantly validates Hewlett's account. Hewlett's account is described as "allegations" in this Order both because the defendants have not conceded the facts of the case and because a plaintiff's allegations are what is tested on a motion to dismiss and a motion to amend.

Utah State and the Personnel Defendants moved to dismiss the contract claim, and the Personnel Defendants moved to dismiss the Section 1983 claims against them on qualified immunity grounds (the "Motion to Dismiss").[2] Hewlett opposes the Motion to Dismiss.[3]

The Motion to Dismiss is granted in part and denied in part. The Personnel Defendants are protected from suit by qualified immunity. Hewlett alleges that the Personnel Defendants could have done more to protect and help her. But the alleged failures do not constitute a violation of clearly established constitutional rights, as required to subject individual state actors to suit. The Section 1983 claim therefore must be dismissed.

The contract claim against the Personnel Defendants is dismissed on Plaintiff's agreement.[4] But the contract claim against Utah State is not dismissed. The complaint sufficiently pleads the elements of a claim for breach of contract. However, the issue raised by Utah State—whether a university code of conduct can be mutually enforced as a contract—is an open question of Utah state law. It may be that this question should be certified to the Utah Supreme Court.

While briefing was pending on the Motion to Dismiss, Hewlett moved for leave to file a Second Amended Complaint (the "Motion to Amend").[5] The Motion to Amend is timely and would not prejudice the defendants at this early stage of the proceedings. The proposed

---

[2] Motion to Dismiss Amended Complaint Against the Individual Defendants on § 1983 Claim and Motion to Dismiss and for Judgment on the Pleadings on Breach of Contract Claim, docket no. 82, filed August 11, 2017. The Personnel Defendants have filed both a motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c) as to the contract claim. Because dismissal of the contract claim is the relief sought under both rules, the motion is referred to herein as the "Motion to Dismiss" for convenience.

[3] Plaintiff's Opposition to Motion to Dismiss Amended Complaint Against the Individual Defendants on § 1983 Claim and Motion to Dismiss and for Judgment on the Pleadings on Breach of Contract Claim ("Opposition to Motion to Dismiss"), docket no. 118, filed October 6, 2017.

[4] Opposition to Motion to Dismiss at 3.

[5] Plaintiff's Motion for Leave to File Her Second Amended Complaint ("Motion to Amend"), docket no. 93, filed September 5, 2017.

2

amendments refine Hewlett's legal claims without expanding upon the factual allegations. The Motion to Amend is granted as to the proposed amendments to Hewlett's contract claim. However, because the Section 1983 claim is dismissed on qualified immunity grounds, even taking into consideration Hewlett's proposed amendments, the Motion to Amend the Section 1983 claim is denied for futility.

**Table of Contents**

Standard of Review on Motion to Dismiss ................................................................................ 3
Background ............................................................................................................................... 4
      The Personnel Defendants ............................................................................................. 4
      The Student Code .......................................................................................................... 5
Discussion ................................................................................................................................. 6
      The Personnel Defendants Are Dismissed for Qualified Immunity. ............................. 6
      The Contract Claim Is Not Dismissed, but an Issue of State Law May Be Certified. ...... 10
      Hewlett Is Granted Leave to Amend Her Breach of Contract Claim Only. .................... 12
Order ...................................................................................................................................... 13

## STANDARD OF REVIEW ON MOTION TO DISMISS

On a motion to dismiss under Rule 12(b)(6),[6] courts accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.[7] Conclusory allegations without factual averments are not afforded the same presumption of truth on a motion to dismiss.[8] Accepting the plaintiff's allegations of fact as true enables a court to determine whether the claim states enough facts to be plausible on its face.[9] Accordingly, the facts set forth in the following Background summary are drawn from Hewlett's complaint and taken as true only for purposes of the Motion to Dismiss.

---

[6] Fed. R. Civ. P. 12(b)(6). The standard applies equally to motions for judgment on the pleadings under Rule 12(c).

[7] *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1152–53 (10th Cir. 2001).

[8] *Id.* at 1154–55.

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## BACKGROUND

The motions decided by this Order concern two of the eleven causes of action asserted in Hewlett's complaint: (1) the Section 1983 civil rights claim against the Personnel Defendants and (2) the contract claim against Utah State.[10] The relevant background for the Order comes from Hewlett's proposed Second Amended Complaint and Jury Demand (the "Proposed Complaint").[11] The Proposed Complaint is largely identical to the operative First Amended Complaint (the "Operative Complaint"),[12] but includes amendments to the Section 1983 and contract claims. By considering the claims at issue with Hewlett's proposed amendments, the Motion to Dismiss and Motion to Amend can be decided together.

### The Personnel Defendants

The three named Personnel Defendants are employees of Utah State serving in the following positions: Associate Vice President for Student Services, Associate Director of Student Affairs (and liaison with the "Greek community" of fraternities and sororities), and Student Conduct Coordinator and Assessment Specialist.[13]

Hewlett alleges that the Personnel Defendants failed before the Incident to recognize and mitigate the risk that fraternity parties generally and Relopez specifically posed to Hewlett and the Utah State community. Hewlett asserts that Utah State and the Personnel Defendants were aware of a history of fraternity parties with heavy drinking and reported incidents of sexual assault but "chose not to take appropriate measures to ensure that these dangerous practices were

---

[10] The other causes of action Hewlett asserts, which are not affected by this Order, are: (against Gamma Kappa) negligence, premises liability, negligent infliction of emotional distress, and vicarious liability; (against Utah State) violation of Title IX; and (against Relopez) negligence, intentional infliction of emotional distress, and assault.

[11] Proposed Second Amended Complaint and Jury Demand ("Proposed Complaint"), docket no. 93-1, filed September 5, 2017.

[12] First Amended Complaint, docket no. 57, filed July 12, 2017.

[13] Proposed Complaint ¶¶ 28–30.

discontinued."[14] Also, five other women at Utah State had reported to officials that they had been sexually assaulted by Relopez.[15] The Personnel Defendants were aware of the reports.[16] The Personnel Defendants met with Relopez about eight months before the Incident to discuss allegations of rape.[17] The Personnel Defendants communicated that Relopez was on Utah State's "radar" but stopped short of conducting a factual investigation into the claims against Relopez.[18] Relopez was not disciplined or removed from Utah State.[19]

Hewlett further alleges that the Personnel Defendants failed to support her recovery and reintegration at Utah State following the Incident. She asserts that after reporting the Incident to Kevin Webb, neither the Personnel Defendants not any other Utah State official offered or provided necessary services.[20] As a result, Hewlett left Utah State for another university.[21]

### The Student Code

Utah State maintains The Code of Policies and Procedures for Students at Utah State University (the "Student Code").[22] At all times relevant to his case, students enrolled at Utah State, including Relopez, were subject to the Student Code.[23] The Student Code is enforced to control students' on- and off-campus behavior.[24] The Student Code provides in part that:

> Utah State University will not tolerate sexual assault/violence in any form, including incidents which arise in acquaintance and date situations. Where there is

---

[14] *Id.* ¶¶ 1–7.

[15] *Id.* ¶¶ 12, 55.

[16] *Id.* ¶ 12.

[17] *Id.* ¶ 60.

[18] *Id.* ¶¶ 61–62.

[19] *Id.* ¶ 64.

[20] *Id.* ¶ 126.

[21] *Id.* ¶ 127.

[22] *Id.* ¶ 66.

[23] *Id.*

[24] *Id.* ¶ 69.

reasonable cause that a sexual assault/violence has occurred, the University will pursue strong disciplinary action, including the possibility of suspension or expulsion from the University.

Hewlett asserts that the Student Code is a contract between Utah State and its students, including Hewlett and Relopez.[25] Utah State breached the Student Code by "failing to initiate and/or follow procedures and guidelines as to the discipline of a sexually violent student who caused harm to Ms. Hewlett."[26]

## DISCUSSION

### The Personnel Defendants Are Dismissed for Qualified Immunity.

As employees of the state, the Personnel Defendants are entitled to raise the defense of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[27] Once a defendant raises qualified immunity, the plaintiff bears the heavy burden of proving (1) that the facts alleged make out a violation of a constitutional right, and (2) that a reasonable municipal official would have known they were violating such a constitutional right.[28] "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."[29]

Hewlett's allegations show an undeniable gap between what the Personnel Defendants did to help Hewlett and what they could have done. Presented with prior accusations against Relopez of abuse, assault, and rape, the Personnel Defendants met with Relopez and indicated

---

[25] *Id.* ¶ 184.

[26] *Id.* ¶¶ 185, 187.

[27] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation and quotation marks omitted).

[28] *Pearson*, 555 U.S. at 232.

[29] *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

that he would be watched closely.[30] But they did not expel Relopez or take any other disciplinary action at that time, and they did not conduct an independent investigation into the prior claims against him.[31] As a result, Relopez was still a part of the Utah State community when the Incident occurred. Nor did the Personnel Defendants find ways after the Incident to help Hewlett recover from the Incident and resume her education at Utah State.[32]

Unless Hewlett can allege a violation of a "clearly established" constitutional right, the Section 1983 claim[33] against the Personnel Defendants must be dismissed with prejudice because of their qualified immunity.[34] Hewlett asserts violations of both the Equal Protection Clause and the Due Process Clause.[35] Both constitutional claims are suggested by the Operative Complaint, but they are more stated more specifically in the Proposed Complaint. Both claims rely upon the same alleged violation of Hewlett's rights: that the Personnel Defendants failed to intervene to protect Hewlett from Relopez, a third party known to be a potential threat of sexual harassment and assault. Whether the gap between what the Personnel Defendants did and what they could have done constitutes a violation of the Equal Protection Clause or the Due Process Clause need not be answered on this Motion to Dismiss if the right on which Hewlett relies is not clearly established under law.[36]

---

[30] Proposed Complaint ¶¶ 61–62, 64.

[31] *Id.*

[32] *Id.* ¶¶ 126–27.

[33] 28 U.S.C. § 1983.

[34] *Pearson*, 555 U.S. at 234.

[35] Opposition to Motion to Dismiss at 12–20.

[36] *Pearson*, 555 U.S. at 234 (recognizing that some qualified immunity cases can be decided based on whether the right at issue is clearly established without first determining whether the allegations make out a violation of a constitutional right).

Case law does not support Hewlett's claim that the Personnel Defendants violated her clearly established rights. Sexual harassment under color of state law has constituted a clear violation of the Fourteenth Amendment right to equal protection of the laws in the Tenth Circuit since no later than 1989.[37] However, no clear law has been established sufficient to impose Section 1983 liability against a state actor for underreacting to a known potential threat of sexual harassment or assault by a third party acting outside of the mantle of state position and authority. Perhaps this may be clearly established law someday, but no precedent presently establishes a claim on these facts.

A state's failure to protect an individual against private violence is not a violation of due process rights by the state unless (1) the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to the individual or (2) the state created the danger that harmed the individual.[38] Hewlett has not alleged a special relationship of control over her by Utah State sufficient to trigger an affirmative duty to protect her.[39] She has alleged that Utah State created the danger that harmed her.[40]

For a state defendant to create the danger that harmed a plaintiff requires that the defendant recognized the unreasonable risk and actually intended to expose the plaintiff to such risks without regard to the consequences of the plaintiff.[41] The Due Process Clause is not a guarantee against incorrect or ill-advised government decisions.[42] Failing to eliminate a known risk does not give rise to Section 1983 liability; instead, affirmative conduct is a necessary

---

[37] *Woodward v. City of Worland*, 977 F.2d 1392, 1397–98 (10th Cir. 1992).

[38] *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1125–26 (10th Cir. 2008).

[39] Opposition to Motion to Dismiss at 18.

[40] *Id.*

[41] *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1282 (10th Cir. 2003).

[42] *Id.*

precondition to application of the state-created danger theory.[43] Other federal courts have rejected the state-created danger theory in cases involving "student-on-student violence," even when school officials were alleged to have known of a potential threat, on the ground that the schools did not affirmatively act to create the danger.[44] Hewlett's claims likewise fall short of the alleging state-created danger.

Hewlett argues that her Section 1983 claim is supported by clearly established law, including the Tenth Circuit's 1999 decision in *Murrell v. School District No. 1, Denver, Colorado*.[45] In *Murrell*, the Tenth Circuit found that deliberate indifference to sexual harassment by school employees exercising supervisory authority over students is a clearly established violation of the Fourteenth Amendment's Equal Protection Clause.[46] *Murrell* involved sexual harassment at a public school by one student against another under the supervision of school personnel who were aware of the risks posed by the offending student.[47] Hewlett's case is distinguishable from *Murrell* in that the Incident did not take place at school under the school's supervision. The potential threat Relopez posed to Hewlett, of which the Personnel Defendants were allegedly aware, was realized off campus and outside of the Personnel Defendants' supervision. In *Murrell,* school personnel stood by, with knowledge that (a) Murrell's daughter Jones was a victim of assault at a prior school due to her developmental disabilities; (b) the perpetrator was a known risk generally and specifically to Jones; (c) Murrell had personally warned school staff of the risks the perpetrator posed to Jones; and (d) several assaults on Jones

---

[43] *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 925 (10th Cir. 2012).

[44] *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 610–11 (E.D. Pa. 2014) (citing Third Circuit precedent).

[45] *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1250–51 (10th Cir. 1999).

[46] *Id.* at 1250–51.

[47] *Id.* at 1243–44.

occurred on school premises with the knowledge of school staff who did not notify Murrell and told Jones not to inform Murrell. *Murrell* has other inflammatory facts.

*Murrell's* claim was that "the principal and the teachers knew about Mr. Doe's harassment of Ms. Jones and acquiesced in that conduct by refusing to reasonably respond to it."[48] Because the law requires that "[i]n order to state a [Section 1983] claim of 'deliberate' discriminatory conduct, a plaintiff must state facts sufficient to allege 'defendants actually knew of and acquiesced in' Mr. Doe's behavior,"[49] the Tenth Circuit held that Murrell "has therefore stated a claim under section 1983 against the principal and the teachers in their individual capacities . . . ."[50]

But this case does not approach *Murrell*. The Personnel Defendants did not know of prior threats or assaults against Hewlett. The complaint does not allege a level of control over Relopez or plaintiff similar to that available in *Murrell*. The Personnel Defendants did not violate a clearly established law by *underreacting* to a *potential* threat of sexual assault or harassment. Qualified immunity therefore protects Personnel Defendants from suit.

**The Contract Claim Is Not Dismissed, but an Issue of State Law May Be Certified.**

Utah State argues that Hewlett's contract claim should be dismissed because student handbooks, policies, or codes are not enforceable against a university as contracts as a matter of law.[51] "The issue of whether a contract exists may present questions of both law and fact."[52]

---

[48] *Id.* at 1250–51.

[49] *Id.* at 1250.

[50] *Id.* at 1251.

[51] Motion to Dismiss at 16–20.

[52] *State v. Ison*, 96 P.3d 374, 378 (Utah App. 2004), *aff'd*, 135 P.3d 864 (Utah 2006) (quoting *Nunley v. Westates Casing Servs., Inc.*, 989 P.2d 1077 (Utah 1999)).

"Whether a contract has been formed is ultimately a conclusion of law, but that ordinarily depends on the resolution of subsidiary issues of fact."[53]

Hewlett has sufficiently pleaded facts to support the elements of a claim for breach of contract.[54] Hewlett asserts that the "Student Code constitutes an agreement between Utah State University and its students."[55] The Student Code is enforced to control students' on- and off-campus behavior.[56] Hewlett further alleges that Utah State breached the Student Code's provisions on sexual assault and violence, which harmed Hewlett by causing the Incident.[57] These allegations are sufficient to survive a motion to dismiss the contract claim.

However, the legal issue raised by Utah State—whether a university policy can be mutually enforced as a contract—is an open question of state law. Utah State has cited to other jurisdiction that have declined to treat university policies as contracts.[58] However, Utah State has not shown that Utah law aligns with these decisions. Federal courts rely upon the underlying state contract law to determine a question of contract formation. For example, a North Carolina district court observed that North Carolina courts treat university handbooks like employee handbooks, which are only enforced as contracts in that state "when they are explicitly included by reference in the employee handbook."[59] Utah law takes a different approach to employee

---

[53] *Id.*

[54] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001) ("The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages.").

[55] Proposed Complaint ¶ 184.

[56] *Id.* ¶ 69.

[57] *Id.* ¶¶ 185, 187.

[58] Motion to Dismiss at 19 (citing New Mexico law and federal cases relying on Oklahoma and other states' laws); Reply in Support of Motion to Dismiss at 9–10, docket no. 127, filed October 30, 2017 (citing Minnesota law).

[59] *Guiliani v. Duke Univ.*, Case No. 1:08-cv-00502, 2010 WL 1292321, *7–8 (M.D.N.C. March 30, 2010).

handbooks as contracts,[60] which suggests that the Utah Supreme Court could reach a different result. Absent direction from the Utah Supreme Court, this federal court will not summarily find as a matter of law that a university policy such as the Student Code fails to form a mutually enforceable contract. Accordingly, the parties are directed to examine whether this question should be certified to the Utah Supreme Court under Rule 41 of the Utah Rules of Appellate Procedure;[61] to meet and confer; and, if it should be certified, to propose an order certifying the question.

### Hewlett Is Granted Leave to Amend Her Breach of Contract Claim Only.

Hewlett already amended her complaint once as a matter of course. She now seeks leave under Rule 15(a)(2) to file a Second Amended Complaint. The Second Amended Complaint changes Hewlett's pleading in two ways: (1) to clarify that the contract claim is against Utah State but not the Personnel Defendants or any other defendant; and (2) to expand the legal theory for her claims under Section 1983.[62] Leave to amend should be freely given "when justice so requires."[63] "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[64]

Defendants do not challenge the amendment to clarify that the contract claim is limited to Utah State. That amendment will be permitted.

---

[60] *Hodgson v. Bunzi Utah, Inc.*, 844 P.2d 331, 333–34 (Utah 1992) (holding that "an employee may use an employer's written policies, bulletins, or handbooks as evidence of an implied-in-fact contract," unless the employer includes a "clear and conspicuous disclaimer of contractual liability").

[61] Utah R. App. P. 41 ("The Utah Supreme Court may answer a question of Utah law certified to it by a court of the United States when requested to do so by such certifying court acting in accordance with the provisions of this rule if the state of the law of Utah applicable to a proceeding before the certifying court is uncertain.").

[62] Proposed Complaint ¶¶ 167–182, 183–187.

[63] Fed. R. Civ. P. 15(a)(2).

[64] *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

Defendants argue that the amendment should be refused both because the deadline for amending pleadings set forth in the parties' scheduling order has passed and because the amendment would be futile. Although "[u]ntimeliness alone may be a sufficient basis for denial of leave to amend," that principle has been applied in more extreme cases of delay or when trial was imminent and amendment would prejudice the proceeding.[65] And although a plaintiff seeking to amend her complaint after a scheduling order deadline must establish good cause for doing so,[66] Hewlett has shown good cause to deviate from the scheduling order proportionate to the nature of the amendments she seeks. The Second Amended Complaint does not add new allegations of fact; rather, it further explains the legal theories of the claims. The Motion to Amend will not be denied on the basis of untimeliness.

However, a district court may refuse leave to amend if amendment would be futile. A proposed amendment is futile if the claim, as amended, would be subject to dismissal.[67] The amendments to Hewlett's Section 1983 claims are futile here because those claims must be dismissed, as explained above. Therefore, leave is granted to amend the contract claim only.

## ORDER

IT IS HEREBY ORDERED that the Motion to Dismiss[68] is GRANTED IN PART and DENIED IN PART. Hewlett's claim for violation of Section 1983 against Eric Olsen, Krystin Deschamps, and Kevin Webb is DISMISSED WITH PREJUDICE on the basis of qualified immunity. Hewlett's claim for breach of contract by the Personnel Defendants is GRANTED.

---

[65] *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).

[66] *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014).

[67] *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations and quotation marks omitted).

[68] Docket no. 82.

The Motion to Dismiss is DENIED as to Hewlett's claim for breach of contract against Utah State, which is not dismissed.

IT IS FURTHER ORDERED that the Motion to Amend[69] is GRANTED IN PART and DENIED IN PART. Hewlett is granted leave to amend the claim for breach of contract, but not the dismissed Section 1983 claim. The parties are directed to examine whether this question should be certified to the Utah Supreme Court under Rule 41 of the Utah Rules of Appellate Procedure; to meet and confer; and, if it should be certified, to propose an order certifying the question.

Dated February 8, 2018.

BY THE COURT:

David Nuffer
United States District Judge

---

[69] Docket no. 93.