# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH—CENTRAL DIVISION

| | |
|---|---|
| VICTORIA HEWLETT, | Case No. 2:16:cv-01141-DN |
| Plaintiff, | District Judge David Nuffer |
| v. | Magistrate Judge Brooke Wells |
| UTAH STATE UNIVERSITY, SIGMA CHI CORPORATION, GAMMA KAPPA FOUNDATION, GAMMA KAPPA, JASON RELOPEZ, GAMMA KAPPA HOUSE CORPORATION, and John and Jane Does I-XX, | MEMORANDUM DECISION DENYING MOTION TO DISQUALIFY COUNSEL |
| Defendants. | |

This matter is referred to the undersigned in accordance with 28 U.S.C. 636(b)(1)(A) by Judge David Nuffer.[1] Before the court is Plaintiff Victoria Hewlett's (Plaintiff) Motion to Disqualify Counsel for Gamma Kappa,[2] specifically Saul Ewing Arnstein & Lehr, LLP and Kipp & Christian. On November 7, 2018, the court heard oral argument on the pending motion and took the matter under advisement.[3] After considering the briefs submitted by counsel, as well as oral argument, the court DENIES the Motion to Disqualify Counsel.[4]

---

[1] ECF No. 52.
[2] ECF No. 145.
[3] That day the court also heard argument on Defendant Gamma Kappa's Motion to Strike Declaration of Todd Wahlquist [ECF No. 148]. The motion was granted and the court issued a written Order regarding the same on November 15, 2018. [ECF No. 160]. Accordingly, the court did not consider the Wahlquist Declaration in its analysis of the Motion to Disqualify.
[4] The court notes Sigma Chi Corporation, Gamma Kappa Alumni Foundation, and Gamma Kappa House Corporation (Sigma Chi Defendants) joined in Gamma Kappa's opposition to the Motion to Disqualify. [ECF No. 151].

Page 1

## BACKGROUND AND ANALYSIS

The court begins by acknowledging the facts in this case are disturbing. Plaintiff alleges in July 2015, at the age of 19, she was furnished alcohol and was then beaten and raped by a fellow Utah State University (USU) student at the Gamma Kappa chapter house of Sigma Chi fraternity.

Plaintiff filed her original complaint in this action on November 16, 2016.[5] The court has original jurisdiction under 28 U.S.C. §1332 (diversity).[6] An Amended Complaint was filed on July 12, 2017.[7] Thereafter, a Second Amended Complaint was filed March 9, 2018,[8] and two weeks later a Second Amended Complaint and Jury Demand (Second Version)[9] (the Complaint) was filed. The Complaint contains eight causes of action—four are against the Fraternity Defendants,[10] one was against USU, and the remaining three are against Defendant Jason Relopez (Relopez), the alleged rapist. The causes of action against the Fraternity Defendants are: 1) negligence; 2) premises liability; 3) negligent infliction of emotional distress; and 4) vicarious liability. The claim against USU for alleged violation of 20 U.S.C. §1981 (Title IX) was dismissed with prejudice per stipulation of the parties.[11] On April 2, 2018, Plaintiff filed a Motion to Disqualify Counsel for Gamma Kappa (the motion).[12]

About a month before filing the motion, on March 1, 2018 (sixteen months after commencing this action), the Plaintiff filed a complaint against 24 former members or Chapter

---

[5] ECF No. 2.
[6] ECF No. 2-1.
[7] ECF No. 57.
[8] ECF No. 132.
[9] ECF No. 142. This is technically a Third Amended Complaint.
[10] The Fraternity Defendants are collectively Gamma Kappa, Sigma Chi Corporation, Gamma Kappa Alumni Foundation and Gamma Kappa House Corporation.
[11] ECF No. 157.
[12] ECF No. 145.

Officers of Gamma Kappa Sigma Chi fraternity (GKSC).[13] The complaint in the state action alleges five causes of action against these 24 individuals: 1) negligent infliction of emotional distress; 2) intentional and/or negligent infliction of emotional distress; 3) negligence; 4) civil conspiracy; and 5) premises liability. The causes of action in the state case arise from the same subject matter as this action. None of the 24 defendants in the state action are named as defendants in this action.[14] In fact, not all of the defendants in the state court action have been served. Only three of them have filed notices of appearance for counsel—and based on the information in the docket none of them have retained Saul Ewing Arnstein & Lehr, LLP or Kipp & Christian. Also, the state court has issued numerous continuances at Plaintiff's request. Plaintiff alleges she has not prosecuted the state action because she is waiting for this court to issue a ruling on the pending motion.

In this case, the original Scheduling Order was entered in January 2017.[15] In July 2017, Plaintiff filed a Motion to Compel Various Defendants to Provide Contact Information for Witnesses and Allow Contact with Witnesses[16] and a Motion to Compel Various Defendants to Respond to Interrogatory No. 1.[17] The crux of these motions was that the Fraternity Defendants collectively identified over 110 individuals with discoverable information, but did not provide contact information for any of these witnesses, even though Plaintiff alleged they were not

---

[13] The court takes judicial notice of the state court action filed in the Third Judicial District Court, *Hewlett v. Renner*, 180901248.
[14] Plaintiff dismissed Defendant Matthew Morgan (Morgan) from the state action.
[15] *See* ECF No. 42. The court vacated the Pre-trial Conference and entered an order which state and deadlines and hearings will be rescheduled upon the undersigned's ruling on the motion. *See* ECF No. 164.
[16] ECF No. 49.
[17] ECF No. 51.

officers, agents or control group witnesses. In July 2017, the court entered an order as to both motions, granting the first one and denying the second.[18] In its order, the undersigned explained:

> Under Rule 4.2(d)(2) of the Utah Rules of Professional Conduct, a "control group" means the following persons:
>
>> (A) the chief executive officer, chief operating officer, chief financial officer, and the chief legal officer of the organization; and (B) to the extent not encompassed by Subsection (A), *the chair of the organization's governing body, president, treasurer, secretary and a vice-president or vice-chair who is in charge of a principal business unit, division or function (such as sales, administration or finance) or performs a major policy-making function for the organization*; and (C) any other current employee or official who is known to be participating as a principal decision maker in the determination of the organization's legal position in the matter. (Emphasis added).[19]

Pursuant to Rule 4.2, the court found that under the "control group" definition, Fraternity Defendants' counsel "can reasonably claim to represent current and former officers for the relevant period (i.e. from 2012 when Mr. Relopez joined the fraternity to now)[.]"[20] The court explained that "[f]or those non-officer individuals, . . . Fraternity Defendants' counsel need to establish a proper attorney-client relationship in order to claim that those individuals are represented by counsel in this matter."[21] The court also ordered Defendants to supplement their Rule 26(a)(1) disclosures so Plaintiff would be able to interview unrepresented non-control group witnesses outside the presence of Fraternity Defendants' counsel.[22]

Nine months later, the Plaintiff filed the motion pending before the court. The gist of Plaintiff's motion is that there are non-waivable conflicts of interest between and amongst Gamma Kappa and the 24 individual defendants named in the state court action under Rule 1.7

---

[18] *See* ECF No. 63.
[19] *Id.* at 2.
[20] *Id.*
[21] *Id.*
[22] *Id.* at 3.

of the Utah Rules of Professional Conduct (Rule 1.7). Disqualification is a drastic measure that should only rarely be granted.[23] The movant bears the burden of establishing facts that warrant disqualification.[24] This court has previously explained:

> '[m]otions to disqualify are governed by two sources of authority.' First, lawyers are bound by the local rules of the court in which they appear. Federal courts generally adopt the rules of professional conduct of the state in which they are located. Second, because motions to disqualify 'are substantive motions affecting the rights of the parties, they are decided applying standards developed under federal law.' Therefore, such motions 'are governed by the ethical rules announced by the national profession and considered 'in light of the public interest and the litigants' rights.''[25]

It is undisputed the local rules of this court require "attorneys practicing before this court" to be governed and comply with the Utah Rules of Professional Conduct as interpreted by this court.[26]

Plaintiff argues Gamma Kappa's counsel should be disqualified under Rule 1.7. Rule 1.7(a) provides that,

> a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict exists if: (a)(1) [t]he representation of one client will be directly adverse to another client; or (a)(2) [t]here is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client[.]"[27]

Subsection (b) of the rule also provides that:

> [n]otwithstanding the existence of a concurrent conflict of interest . . . , a lawyer may represent a client if . . . the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client: . . . the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; . . . and each affected client gives informed consent, confirmed in writing.[28]

---

[23] *Procter & Gamble Co. v. Haugen*, 183 F.R.D. 571, 574 (D. Utah 1998).
[24] *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1480 (D. Utah 1994).
[25] *Flying J Inc. v. TA Operating Corp.*, 2008 WL 648545, at *6 (D. Utah Mar. 10, 2008, J. Nuffer).

[26] DUCivR 83-1.1(h).
[27] Utah R. Prof'l Conduct 1.7(a).
[28] *Id.* at 1.7(b).

Plaintiff makes several arguments in support of her motion. Plaintiff argues Fraternity Defendants' counsel has signed up "dozens of individual former officers and members" of Gamma Kappa as clients in order to block her access to individual witnesses and to ensure that the 24 individual defendants "run with the herd" in defense of Gamma Kappa.[29] However, there is no evidence of this accusation in the record, and counsel for Gamma Kappa adamantly disputed this in briefing and at oral argument.[30] Likewise, the 24 individual defendants in the state court action are not named defendants in this action. Although Plaintiff has amended her complaint three times in this action, she never referenced or added any of the 24 individual defendants in the state action to this action. Moreover, Plaintiff also acknowledged during oral argument that she has not filed a motion to disqualify in the state action.[31] Next, Plaintiff argues that when counsel for Gamma Kappa "agreed to represent these individuals," Gamma Kappa had taken the position that prior to Plaintiff's rape it had no knowledge that Relopez was a "dangerous predator of women."[32] Plaintiff claims the circumstances have now changed because "multiple witnesses have testified that at least 8 months before Relopez's assault on [Plaintiff], certain GK officers knew of credible allegations that Relopez had raped, sexually abused and harassed several women and that sexual abuse of women by other GK members had also occurred."[33] However, Plaintiff does not identify any of these "multiple witnesses;" she simply cites Defendants' Answer to one of her amended complaints where Gamma Kappa denied certain allegations based on "insufficient information." Based on representations made in

---

[29] *See* ECF No. 145 at 4.
[30] *See* ECF No. 149 at 5.
[31] This is presumably not only because not all of the defendants have been served, but also because thus far none of the individual defendants have retained Saul Ewing Arnstein & Lehr, LLP and/or Kipp & Christian as counsel in the state action.
[32] *Id.*
[33] *Id.* at 4-5.

briefing and oral argument, it appears Plaintiff has not deposed any of the witnesses she claims have given testimony in conflict with Relopez's[34]–in fact his deposition is the only testimony attached to the motion.[35] Finally, Plaintiff argues that because Gamma Kappa's insurer sent a "no coverage, no indemnity" letter to Gamma Kappa under a policy exclusion, the individual defendants will be exposed to liability unless they "run with the herd."[36]

It is undisputed the 24 individual defendants in the state action are not parties to this action. It also appears Fraternity Defendants' counsel have not entered an appearance for any of the unrepresented individual defendants in the state action. Foremost, in this matter, Saul Ewing Arnstein & Lehr and Kipp & Christian only represent one defendant—Gamma Kappa—none of the 24 individuals in the state action are their "clients" in this action. In this action, the undersigned has already entered an order to address the representation of "control group" members and non-officer individuals under Rule 4.2. Thus, as a preliminary matter, there is no concurrent conflict in violation of Rule 1.7(a) here.

The court has held the Fraternity Defendants' counsel may represent the individual defendants in this action under Rule 4.2 if they meet the definition of "control group" as set forth

---

[34] *See* ECF No. 149 at 10. In fact, it appears Plaintiff has not deposed a single Gamma Kappa officer to this point. It is alleged Plaintiff noticed the deposition of a control group member Kory Ingersoll, but then abruptly canceled it last minute, after Gamma Kappa's counsel had already traveled to Wyoming to prepare and defend the deposition. *See id*. at 11.

[35] Also, although Plaintiff cites to the testimony of a non-party, named M.K., her testimony is not part of the record.

[36] *Id.* at 5. In her reply brief, for the first time, Plaintiff also asserted that one of the defendants in the state action, Morgan (whom she dismissed with prejudice), did not receive an *Upjohn* warning. *See* ECF No. 152 at 4 and 152-5. Plaintiff argues that since Morgan did not receive an Upjohn warning, this establishes that Fraternity Defendants' counsel have not informed fraternity officers or the "control group" of potential conflicts, or advised them to retain separate counsel. However, the Declaration of Robert Cummings does not address any of these accusations. In fat it is unclear from the Declaration when Morgan retained Mr. Cummings, or whether Morgan ever met, was interviewed or received any advice from the Fraternity Defendants' counsel. *See* ECF No. 152-5.

by the court order issued in July 2017. The court also explained that for those non-officer individuals who do not meet the definition of "control group" under Rule 4.2, the Fraternity Defendants' counsel will need to establish a proper attorney-client relationship which comports with the requirements of Rule 1.7.[37] Per Rule 1.7(b), it is possible that if a concurrent conflict arises, the individual defendants may consent to waive it in writing. At this time, given the stage of these proceedings, it is premature to make this sort of determination. As to the state action, the individual defendants have several options—they may retain separate counsel, or engage Gamma Kappa's counsel to defend them. But at this juncture, where not all of the defendants in the state action have been served or entered a notice of appearance, any potential conflicts there are not ripe. Moreover, the proceedings in the state action are outside of this court's jurisdiction—the Plaintiff cannot conflate issues between this action and the state action she filed to raise violations of ethical rules warranting disqualification.

Even assuming the court had found a violation of the ethical rules, "a motion to disqualify should be viewed with 'extreme caution . . . recognizing the possible unfair advantage that may result.'"[38] In deciding a disqualification motion,

> the court must carefully consider the facts of the particular case, the nature of the violation, and its impact on trial proceedings. Factors to be considered include (1) the egregiousness of the violation, (2) the presence or absence of prejudice to the other side, (3) whether and to what extent there has been a diminution of effectiveness of counsel, (4) hardship to the other side, and (5) the stage of trial proceedings. The essential issue to be determined 'is whether the alleged misconduct taints the lawsuit.'[39]

As mentioned above, Plaintiff has not established a violation of ethical rules here, thus the first factor weighs against disqualification. Next, Plaintiff has not established she will be prejudiced

---

[37] *See* ECF No. 63 at 2.
[38] *Flying J Inc*., 2008 WL 648545 at *6 (internal citations omitted).
[39] *Id*.

by Gamma Kappa's continued representation. Thus far, it does not appear Gamma Kappa's counsel has provided any legal advice or representation to the control group or any other of the 24 individual defendants regarding matters at issue in this action. Plaintiff asserts different interests may arise between members of the control group and other of the 24 individual defendants, but the assertions are conclusory and unsupported at this point. Potential "hypothetical" conflicts do not create prejudice. The court's view of Gamma Kappa's counsel's ability to represent its client in this case has not been so undermined as to warrant disqualification. The court next considers the hardship disqualification would impose on Gamma Kappa. It appears Gamma Kappa's counsel has handled numerous fraternity cases across the country, and has represented Gamma Kappa since the inception of this case over two years. Current counsel has handled discovery and motion practice to date. Thus, the hardship disqualification would inflict on Gamma Kappa would be significant. Finally, the court considers the stage of proceedings. Although no trial date has been set, and discovery has essentially been stayed, the case was filed over two years ago. Discovery is underway and several motions have been filed and decided. Thus, this factor also weighs against disqualification.

As a final note, "disqualification motions must be diligently pursued to avoid waiver and may not be used as strategic litigation tactics."[40] This case was filed in November 2016. Plaintiff's motion was not filed until April 2018, seventeen months later. It is notable that Plaintiff did not file the motion until learning of the "no coverage letter" in November 2017.[41] It is also interesting Plaintiff filed her action against the 24 individual defendants in state court in

---

[40] *Flying J Inc.*, 2008 WL 648545, at *8 (internal citations omitted).
[41] *See* ECF No. 145 at 5.

March 2018, but has not served all the defendants or taken any steps to prosecute that action allegedly due to awaiting the decision of this motion. Thus, the court concludes Plaintiff's delay and tactics in filing the motion weigh against disqualification. Based on the foregoing, the court concludes Saul Ewing Arnstein & Lehr and Kipp & Christian's disqualification from continued representation of Gamma Kappa in this case is not warranted.

**ORDER**

Plaintiff's Motion to Disqualify [ECF No.145] is DENIED.

DATED this 26th day of March 2019.

_____
Brooke C. Wells
United States Magistrate Judge